**Mashood UDDIN, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14–15–00083–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed November 10, 2016

Carmen Mae Roe, Houston, TX, for Appellant

Kimberly Aperauch Stelter, Houston, TX, for State

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

J. Brett Busby, Justice

A jury convicted appellant Mashood Uddin of aggravated kidnapping and sentenced him to eight years in prison. He challenges his conviction in this appeal, asserting in part that the jury charge was erroneous because it enlarged the indictment and did not require the jury to find all essential elements of the offense. The State does not dispute these errors but argues that they did not cause egregious harm. Having reviewed the entire charge, the evidence at trial, the closing arguments of counsel, and other relevant information in the record, we conclude that appellant was deprived of his valuable right to a jury determination regarding his guilt of each essential element of aggravated kidnapping as charged in the indictment. We therefore reverse the trial court's judgment and remand this case for a new trial.

### BACKGROUND

Appellant was charged with aggravated kidnapping and pleaded not guilty. At trial, the complainant testified that she was at a nightclub with a friend when she met appellant. After dancing with appellant, she gave him her phone number. The complainant then began to look for her friend and appellant followed her. According to the complainant, appellant pushed her down on a couch and, when she got up to leave, followed her out of the club. Appellant pushed her toward a car, where another man forced her into the back seat and sexually assaulted her while appellant drove. The complainant initially resisted the man but stopped resisting after he hit her in the face. Appellant later switched places with the other man and attempted to assault the complainant sexually but stopped when she resisted. Appellant and the other man eventually released the complainant at the same club and drove away. Appellant called the complainant later that morning to ask when she arrived home, and the two spoke on the phone several times thereafter. Recordings of some of the calls were offered into evidence. At the urging of police, the complainant arranged to meet appellant at another club, where he was arrested.

Appellant did not testify at trial. Through cross-examination of the State's witnesses and references to the call recordings, appellant's counsel sought to develop various defensive theories and to undermine the witnesses' credibility by identifying inconsistencies in their testimony. As the State acknowledged in its closing argument, appellant's defensive theories included that the encounter in the car was consensual or that the complainant was mistaken in identifying appellant as a participant in the kidnapping, which may have been committed by the complainant's then-boyfriend.

Appellant complains that the trial court erred in charging the jury on aggravated kidnapping. A person commits aggravated kidnapping if he (1) intentionally or know-

ingly abducts another person (2) with aggravating intent—in this case, the intent to violate or abuse her sexually. *See* Tex. Penal Code Ann. § 20.04(a)(4) (West 2011). The first element—abduction—requires proof that the defendant restrained the other person with intent to prevent her liberation by either (a) secreting or holding her in a place where she is not likely to be found, or (b) using or threatening to use deadly force. *See* Tex. Penal Code Ann. § 20.01(2).

The indictment alleged only the first definition of the abduction element. Specifically, it alleged that appellant "intentionally and knowingly abduct[ed] ... the Complainant, without her consent, with intent to prevent her liberation by secreting and holding the Complainant in a place where the Complainant was not likely to be found and with intent to violate and abuse the Complainant sexually."

The jury charge included instructions that tracked the language of the indictment with two exceptions: (1) the abstract portion listed only the second definition of abduction, which had not been charged in the indictment; and (2) the application paragraph set out the two elements of the offense disjunctively. The relevant definitions from the abstract portion read as follows:

> A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to violate or abuse her sexually.

> The term "abduct" means to restrain a person with intent to prevent her liberation by using or threatening to use deadly force.

After additional definitions and instructions on the law of parties, the charge applied the law to the facts of the case in the following paragraph:

> Now, if you find from the evidence beyond a reasonable doubt that ... defendant, Mashood Uddin, did then and there unlawfully, intentionally or knowingly abduct [the complainant], without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found *or* with intent to violate or abuse [the complainant] sexually, or if you find from the evidence beyond a reasonable doubt that ... another person or persons, did then and there unlawfully, intentionally or knowingly abduct [the complainant], without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found *or* with the intent to violate or abuse [the complainant] sexually, and that the defendant, Mashood Uddin, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid the other person or persons to commit the offense, if he did, then you will find the defendant guilty of aggravated kidnapping, as charged in the indictment.

(emphasis added). The jury was not charged on any additional counts or lesser-included offenses. Each party told the trial court that it had no objections to the charge. The jury returned a general verdict of guilty, found that appellant voluntarily released the complainant in a safe place, and sentenced appellant to eight years in prison.

## ANALYSIS

In his first issue, appellant contends that the jury charge is erroneous because it fails to set forth accurately the law applicable to the case. *See* Tex. Code Crim. Proc. Art. 36.14 (West 2007). Appellant also contends that the errors deprived him of his right to a unanimous jury verdict

because they allowed the jury to convict him without requiring it to reach agreement on the elements necessary to support that conclusion, thus violating his right to a fair and impartial trial. *See Sanchez v. State*, 209 S.W.3d 117, 125 (Tex. Crim. App. 2006).

## I. Standard of review

In a criminal case, we review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.*

The degree of harm necessary for reversal depends on whether the appellant preserved the error by objecting to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When charge error is not preserved, as in this case, reversal is not required unless the resulting harm is egregious. *Id.*; *see also* Tex. Code Crim. Proc. Art. 36.19.

Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez*, 209 S.W.3d at 121. That is, the error must have been so harmful that the defendant was effectively denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 172. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. Neither party has the burden to show

harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## II. The jury charge included two legal errors.

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. Art. 36.14. "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The application paragraph applies the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (citing *Gray*, 152 S.W.3d at 127–28). Because the application paragraph specifies "the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Id.* at 367 (quoting *Gray*, 152 S.W.3d at 128). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Reeves*, 420 S.W.3d at 818 (citing *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)).

In criminal cases, the jury must find every constituent element of the charged offense. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). The jury is not necessarily required, however, to find that the defendant committed that crime in one specific way or even with one specific act. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008). In determining the elements on which a jury must

agree, courts should look to the penal statute. *Id.* at 536.

■ The Penal Code provides a list of aggravating intents that distinguish the third-degree felony of kidnapping from the first-degree felony of aggravated kidnapping. *See* Tex. Penal Code §§ 20.03, 20.04. As relevant here, section 20.04 of the Penal Code provides that a person is guilty of aggravated kidnapping "if he [1] intentionally or knowingly abducts another person [2] with the intent to … inflict bodily injury on him or violate or abuse him sexually." Tex. Penal Code Ann. § 20.04(a)(4). Section 20.03 provides that a person is guilty of kidnapping "if he intentionally or knowingly abducts another person." *Id.* § 20.03. Accordingly, in an aggravated kidnapping case such as this one, the State must prove, and a jury must unanimously find, both intentional or knowing abduction *and* the presence of an aggravating intent—here, the intent to inflict bodily injury or violate or abuse the complainant sexually. *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009); *see also Jourdan*, 428 S.W.3d at 94.

■ The abstract portion of the charge contained an error in defining abduction. Section 20.01 provides the following definition:

"Abduct" means to restrain a person with intent to prevent his liberation by:

(A) secreting or holding him in a place where he is not likely to be found; or

(B) using or threatening to use deadly force.

Tex. Penal Code § 20.01(2). That is, a person can be abducted by either of the two methods provided in the definition.

■ When a statute provides alternative means of committing an element of an offense and the indictment alleges only one of the methods, the applicable law to be included in the jury charge is the sole method alleged in the indictment. *See Clinton v. State*, 354 S.W.3d 795, 799 (Tex. Crim. App. 2011). Because the indictment specifically alleged only the secreting-or-holding method of abduction, a finding on that alleged method was necessary to support a conviction. *Curry v State*, 30 S.W.3d 394, 403, 405 (Tex. Crim. App. 2000) (holding defendant charged with aggravated kidnapping is entitled to notice of method of abduction State seeks to prove, and that indictment would not authorize conviction on less than proof of alleged method).

The application paragraph properly included the secreting-or-holding method. The abstract portion of the charge, however, included only the deadly-force method: "The term 'abduct' means to restrain a person with intent to prevent her liberation by using or threatening to use deadly force." Including this unalleged deadly-force method of abduction in the charge was error, as was omitting the alleged secreting-or-holding method of abduction from the abstract portion of the charge. Together, these errors allowed the jury to convict appellant on an unauthorized legal theory. *See Rodriguez v. State*, 18 S.W.3d 228, 232 (Tex. Crim. App. 2000); *Castillo v. State*, 7 S.W.3d 253, 258–59 (Tex. App.–Austin 1999, pet. ref'd) (Onion, P.J. (ret.)) (explaining that one type of charge error occurs when charge authorizes conviction on additional theory not alleged in indictment).

■ The application paragraph of the charge included a second, different error: it did not require the jury to find both of the essential elements of the offense. *See Castillo*, 7 S.W.3d at 258–59 (explaining that another type of charge error occurs when charge authorizes conviction without proof of all requisite elements of offense). The indictment in this case specifically alleged one of the enumerated aggravating

intents: "the intent to violate or abuse [the complainant] sexually." As explained above, this aggravating intent is an essential element of the charged offense of aggravated kidnapping. *See Laster*, 275 S.W.3d at 521–22. Therefore, to convict appellant of aggravated kidnapping, the State had to prove both (1) abduction—that appellant intentionally or knowingly restrained the complainant with the intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found; *and* (2) aggravation—that appellant did so with the intent to violate or abuse her sexually.

The abstract portion of the charge included both elements in stating the offense of aggravated kidnapping, though it defined the abduction element erroneously as explained above. The application paragraph, however, incorrectly permitted the jury to convict appellant of aggravated kidnapping without requiring a finding of both essential elements of the offense: abduction and aggravating intent. That paragraph instructed the jury to find appellant guilty if he "intentionally or knowingly abduct[ed] [the complainant], without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found *or* with intent to violate or abuse [the complainant] sexually" (emphasis added). In other words, the application paragraph erroneously allowed the jury to convict appellant of first-degree felony *aggravated* kidnapping by finding only third-degree felony kidnapping: intentional or knowing abduction.

### III. These errors caused egregious harm.

■ The State does not dispute that the jury charge was erroneous in these ways. Instead, it argues that the errors did not harm appellant. Because appellant did not object to the charge, we may reverse his conviction only if the record shows that the errors resulted in egregious harm. *See Almanza*, 686 S.W.2d at 171. In determining whether jury-charge error is egregiously harmful, we consider not only the erroneous portion of the charge, but also other relevant aspects of the trial. *See Sanchez*, 209 S.W.3d at 121; *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171. These relevant aspects include: (1) the entirety of the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Sanchez*, 209 S.W.3d at 121. Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.*

■ *Entire charge.* In determining whether a charge error is egregiously harmful, we first consider whether a reasonable jury referring to other parts of the charge would find a correct statement of the law or would instead be confused or misled. *Vasquez*, 389 S.W.3d at 371; *Ngo*, 175 S.W.3d at 752 (examining whether error was "corrected or ameliorated in another portion of the charge" or "was compounded by [a] misleading statement" in the charge). For example, omitting an element necessary to convict a defendant is less likely to be harmful if the elements are accurately set forth in another section of the charge. *See Riley v. State*, 447 S.W.3d 918, 929 (Tex. App.–Texarkana 2014, no pet.) (citing *Vasquez*, 389 S.W.3d at 367; *Dinkins*, 894 S.W.2d at 339).

This is not a case, however, in which an error in the application paragraph created a gap that could be filled in with an accurate statement of law found elsewhere in the charge. Instead, the application paragraph here included all of the necessary

elements yet indicated by its use of "or" that not all elements were required in order to convict. Because the error in the application paragraph is an affirmative misstatement of the law rather than an omission, and the abstract portion contains a different error, the charge as a whole indicates that appellant was egregiously harmed.

More specifically, although the abstract portion states the abduction and aggravating-intent elements of aggravated kidnapping conjunctively, this statement is followed immediately by an erroneous definition of the abduction element that includes only the deadly-force method not alleged in the indictment. This error, in turn, compounds the error of using the word "or" in the application paragraph. The application paragraph includes the word "abduct"—thus incorporating the erroneous deadly-force method of abduction from the abstract definition—and then requires the secreting-or-holding method of abduction *or* the aggravating intent to violate or abuse the complainant sexually. When the definition of abduct from the abstract portion is substituted for the word abduct in the application paragraph, that paragraph instructs the jury to convict if appellant "unlawfully, intentionally or knowingly restrained [the complainant] with intent to prevent her liberation by using or threatening to use deadly force, without her consent, with intent to prevent her liberation by secreting or holding [the complainant] in a place where she was not likely to be found *or* with intent to violate or abuse [the complainant] sexually." The State concedes in its brief that this is what the application paragraph effectively required the jury to find.

To the extent these words can be understood at all, jurors could have interpreted the application paragraph in at least two ways: they could conclude that appellant was guilty of aggravated kidnapping if he (1) restrained the complainant with intent to prevent her liberation by using or threatening deadly force and by secreting or holding her in a place where she was not likely to be found, or (2) restrained the complainant with intent to prevent her liberation by using or threatening deadly force and with intent to violate or abuse her sexually. If jurors chose the first interpretation, then they convicted appellant of first-degree felony aggravated kidnapping by finding only third-degree felony kidnapping, as they were not required to find the element of aggravating intent.[1] If jurors chose the second interpretation, the conviction is unauthorized by the indictment because the deadly-force method of abduction was not alleged. Either choice affected the very basis of the case and deprived appellant of the right to a jury verdict on all required elements of the offense of aggravated kidnapping as alleged in the indictment.[2] *See Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that constitu-

1. The State argues that appellant actually benefitted from this interpretation, which raised the State's burden to prove aggravated kidnapping by requiring it to prove both methods of abduction. We disagree that appellant benefitted because this interpretation of the charge requires no finding on the essential aggravating element of intent to violate or abuse the complainant sexually.

2. Given the use of the word "or," it is also possible that the jury interpreted the applica-

tion paragraph as requiring a conviction if appellant restrained the complainant with one of three intents: (1) the intent to prevent her liberation by using or threatening to use deadly force, without her consent, (2) the intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found, or (3) the intent to violate or abuse her sexually. Each of these interpretations likewise could not support a conviction for the reasons we have just discussed.

tional guarantees of due process of law and trial by jury "indisputably entitle a criminal defendant to a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt" (internal quotation marks omitted)); *Cada v. State*, 334 S.W.3d 766, 774, 776 (Tex. Crim. App. 2011) (holding due process requires State to prove beyond reasonable doubt every element of offense alleged, and it cannot substitute alternative element it did not allege).[3]

Even if the jury did not incorporate the unalleged deadly-force definition of abduction into the application paragraph, the charge as a whole left the jury no place to turn for a correct statement of what it was required to find in order to convict appellant of aggravated kidnapping. The State argues that the abstract portion correctly set forth the elements of the offense, but it did not: its first element required a finding that appellant restrained the complainant with intent to prevent her liberation by using or threatening to use deadly force—a method of abduction not alleged in the indictment. The application paragraph, for its part, incorrectly used the conjunction "or" and thus did not require the jury to find the essential aggravating intent in order to find appellant guilty of aggravated kidnapping.

The State also points out that the application paragraph instructed the jury to decide whether appellant was guilty of aggravated kidnapping as charged in the indictment, which had been read to the jury. This argument overlooks the remainder of the application paragraph, which mandated that if the jury found appellant abducted the complainant with intent to prevent her liberation by secreting or holding her *or* with intent to violate or abuse her sexually, "then you will find the defendant guilty ... as charged in the indictment." The application paragraph thus told the jury precisely—and, as it turns out, erroneously—what it needed to find in order to satisfy the indictment. The jury was also told that it must be governed by the law it received in the charge.

There is simply no way that each of the twelve lay jurors, when faced with an error in the abstract portion of the charge, a different error in the application paragraph, and an indictment that did not match either one, somehow identified both errors—which had escaped the notice of the learned trial judge and the parties' counsel—and arrived at a correct understanding of what he or she had to find in order to convict appellant. For these reasons, we conclude that the entirety of the charge weighs heavily in favor of the conclusion that appellant was deprived of his valuable right to have the jury reach a verdict on each essential element of aggravated kidnapping as charged in the indictment. *See Sanchez*, 209 S.W.3d at 121–22, 125 (holding charge error that authorized jury to convict without finding every element of offense beyond reasonable doubt was egregiously harmful in context of trial evidence and jury arguments); *Riley*, 447 S.W.3d at 929 (holding charge that used mandatory language and misled and confused jury about required mens rea "strongly suggests egregious harm"). We next consider whether this harm was ame-

---

**3.** *See also Albert v. State*, 579 S.W.2d 925, 926 (Tex. Crim. App. 1979) (panel op.) (holding, in case where offense may be committed in different manners but indictment alleged one manner but charge contained another, "that it is fundamentally erroneous for the trial court to instruct the jury to convict the defendant on various theories not alleged in the indictment"); *Castillo v. State*, 7 S.W.3d at 258–59 (explaining that although *Almanza* replaced fundamental error doctrine, errors of authorizing conviction on additional theory not alleged in indictment or omitting required element may cause egregious harm).

liorated by. other relevant aspects of the trial.

**Trial evidence.** The State argues that appellant was not harmed because there was sufficient evidence supporting each element of the offense as alleged in the indictment, it is unlikely that the jury would have believed some of the complainant's testimony but not all of it, and appellant presented no evidence suggesting he was guilty of only one element of the crime. This argument "ignores the nature of the [charge] insufficiency at issue here." *Guevara v. State*, 191 S.W.3d 203, 207 (Tex. App.–San Antonio 2005, pet. ref'd) (en banc).

 The State relies on cases in which the charge had a unanimity error: it included multiple charged acts that would constitute the offense and listed all of the proper elements of the offense but failed to instruct the jury that it had to agree unanimously that the defendant committed at least one of the acts. *E.g., Ruiz v. State*, 272 S.W.3d 819, 826 (Tex. App.–Austin 2008, no pet.); *Gandy v. State*, 222 S.W.3d 525, 531 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd). In such cases, a review of the evidence may show that the error was harmless. When the defendant's defensive theory is that he did not commit any of the offenses and his evidence is "of the same character and strength across the board," a guilty verdict shows the jury was not persuaded and makes it "highly likely that the jury's verdicts ... were, in fact, unanimous" as to each act. *Cosio v. State*, 353 S.W.3d 766, 777–78 (Tex. Crim. App. 2011).

The same cannot be said in this case, where the errors included an unalleged deadly-force method of abduction and a disjunctive application paragraph that did not require the jury to find both essential elements of the crime: abduction and aggravating intent. Nothing about the evidence (which we discuss below) makes it likely that the jury disregarded its instructions, actually ignored the deadly-force method of abduction, and in fact found both the secreting-or-holding method of abduction and the required aggravating intent.

 When the jury is incorrectly instructed on disjunctive theories and it renders a general verdict of guilty, the harm analysis must take into account the type of error in the charge. *Guevara*, 191 S.W.3d at 207–08. This Court and others have "distinguished between a charge that correctly states the law but erroneously charges on a theory of guilt unsupported by the evidence and a charge that contains a misleading statement about the law—as we have here." *Green v. State*, 233 S.W.3d 72, 85 n.9 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd); *see also Payne v. State*, 194 S.W.3d 689, 696 n.2 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd); *Guevara*, 191 S.W.3d at 208. "If the challenge is evidentiary, as long as there was sufficient evidence to support one of the theories presented, then the verdict should be affirmed." *Guevara*, 191 S.W.3d at 207–08 (quoting *United States v. Tomblin*, 46 F.3d 1369, 1385 (5th Cir. 1995)).

 But a charge authorizing conviction on an improper legal theory is not free from egregious error simply because the evidence is sufficient to support the allegations of the indictment. *See Lang v. State*, 698 S.W.2d 223, 225 (Tex. App.–Dallas 1985, no pet.). When "jurors have been left the option of relying on a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991). In such cases, "the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is support-

able on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *see also Griffin*, 502 U.S. at 59, 112 S.Ct. 466; *Robinson v. State*, 266 S.W.3d 8, 12 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd); *Green*, 233 S.W.3d at 85 n.9; *Guevara*, 191 S.W.3d at 208.

Our sister court's decision in *Robinson* is instructive. In that case, the defendant was indicted for capital murder, which requires a finding of murder plus an aggravating element. The jury charge included disjunctive submissions, the second one of which did not require the jury to find the aggravating element in order to convict the defendant of capital murder. *Robinson*, 266 S.W.3d at 11. The court of appeals held that the charge contained legal error because the second part "neither tracks the indictment nor satisfies the definition of capital murder contained in the statute," but rather allows a conviction based only on conduct constituting murder. *Id.* at 12. In examining whether this error was egregiously harmful, the court reviewed the record and concluded "that a rational juror could have found [the defendant] guilty beyond a reasonable doubt of capital murder based on either the valid theory or the invalid theory. ... Because it is as likely that the jury relied on the valid theory as the invalid theory to find [the defendant] guilty, and it is impossible to tell which, this factor also favors reversal." *Id.* at 14.

Similarly, there is evidence in this case from which a rational juror could have found appellant guilty beyond a reasonable doubt based either on a valid theory (if such could be discerned from the charge) or on the invalid theory in the application paragraph. As discussed above, the application paragraph: (1) included the alleged abduction method of restraining the complainant with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found; and (2) incorporated the unalleged method of restraint by threatening to use deadly force; but (3) did not require the intent to violate or abuse the complainant sexually necessary for aggravated kidnapping.

The evidence supporting these elements included the complainant's testimony that appellant pushed her toward the car and then drove onto a freeway, effectively holding her in a mobile location where she was unlikely to be found while the other man subdued and sexually assaulted her. She also testified that while appellant was driving, the other man laid on top of her and put all his weight on her, so that it felt at first like she could not breathe. When she tried to push him away, he hit her with his closed fist in the mouth, drawing blood, and kept telling her to shut up. The complainant then decided that "I might as well let him do what he had to do and stop fighting so that maybe ... I could get out of this alive." The charge included an aiding theory that allowed the jury to take the other man's conduct into account in determining appellant's guilt. Of course, there was also evidence that appellant intended to violate the complainant and that the other man did so.[4] But given the other evidence summarized above, it is as likely

---

4. The State contends that appellant presented no evidence suggesting that he was guilty of one element of the crime but not the other. But it is not appellant's burden to present such evidence. Moreover, there was at least a modicum of conflicting evidence regarding the abduction element. For example, the friend who was with the complainant at the club testified that according to the complainant, she was with one guy and when she tried to leave, the other guy hit her and kept her from getting out of the car. In addition, the complainant provided conflicting testimony on whether appellant intended to prevent her liberation.

that the jury relied on the invalid theory in the application paragraph to find appellant guilty, and it is impossible to tell which theory it used. The evidentiary factor therefore does not weigh against the conclusion that the charge error caused egregious harm.

Another instructive decision is *Frost v. State*, 25 S.W.3d 395 (Tex. App.–Austin 2000, no pet.), which held egregiously harmful a jury charge containing a pattern of errors very similar to those here. In that aggravated robbery case, one part of the charge allowed the jury to convict the defendant based on conduct amounting to robbery while failing to include an aggravating element, while another part included an aggravating element not alleged in the indictment. *Id.* at 399. In rejecting the State's argument that the errors were not egregiously harmful because there was substantial uncontroverted evidence of the elements alleged in the indictment, the court "note[d] that this case is unlike those cases in which the jury is presented with two theories, only one of which is alleged in the indictment, and the appellate court determines that there is no egregious harm because there is overwhelming evidence of a correctly submitted theory. In this case, there is no correctly submitted theory; the jury was given two wrong choices." *Id.* at 401. Just so here: the abstract portion included an unalleged definition of abduction, while the application paragraph failed to require the jury to find the aggravating intent. *Frost* supports the conclusion that appellant was egregiously harmed by these errors.

***Jury arguments.*** The State contends that the closing arguments weigh against a holding of egregious harm because appellant did not assert in his argument that he was guilty of some but not all of the elements of the offense, while the State fully accepted the burden of proving all elements of aggravated kidnapping. The State specifically points to the following statement by the prosecutor regarding the instructions:

All [the burden of proof beyond a reasonable doubt] asks is that you look at the element of the offense, ask yourself: Do I have a doubt? Is that doubt reasonable? Does it go to the elements of the offense?

Is it reasonable to believe that on June 24th [the complainant] was not abducted? No way. We know that element. Is it reasonable to believe that she was abducted and sexually assaulted without her consent? It's absolutely reasonable to believe that all of those elements have been met.

We do not agree that this argument is likely to have corrected the charge errors and cleared up the confusion caused by the unalleged definition of abduction and the disjunctive application paragraph. Instead, the argument may have made the confusion worse. The prosecutor did not address the proper definition of abduction, and she referred to "sexual assault" as an element of aggravated kidnapping, which it is not. Even if the jury could have figured out that it should treat the term sexual assault as a reference to the aggravating intent to violate or abuse sexually, the prosecutor's two questions could be interpreted as outlining two different paths to conviction (just as the charge did), with only one path requiring that intent. In addition, the less-than-precise language—"reasonable to believe"—does not ensure the jury understood it was required to find all elements, including the aggravating intent, beyond a reasonable doubt in order to convict. For these reasons, the closing arguments weigh in favor of a holding of egregious harm.

***Other relevant information from the record.*** Finally, the State argues the

threat of harm was alleviated during voir dire by the trial court's summary of the allegations in the indictment and the prosecutors' discussion of each alleged element the State had to prove. Voir dire is so far removed from jury deliberations, however, that it is unlikely jurors would remember those discussions after hearing four days of testimony, receiving the charge from the court, and hearing closing arguments from counsel. *See Riley*, 447 S.W.3d at 931. Even if they did remember the discussion of the indictment during voir dire, the charge erroneously instructed the jury on what it needed to find in order to satisfy the indictment, as explained above. Furthermore, this is not a case in which jurors might have been able to fill gaps in an incomplete jury instruction with information presented in voir dire. Instead, each juror would have had to realize the written instructions were incorrect in two different ways, identify which statements were inaccurate, recall accurate statements of law from voir dire, and disobey the instructions by substituting the correct standard. We cannot imagine that the jurors did so.

Finally, the State contends that the short deliberation time and absence of any questions from the jury suggest a lack of egregious harm. Those facts, however, do not necessarily show that the jury understood the correct law and ignored the erroneous instructions. Instead, they could also show than the jury simply followed the less-demanding standard erroneously presented in the application paragraph and did not meaningfully debate the required findings. This factor therefore has little bearing on the egregious harm analysis. *See id.*

## CONCLUSION

Although there is evidence in the record that supports each of the elements of aggravated kidnapping, the charge given the jury was not just incomplete—it was affirmatively misleading. The abstract portion of the jury charge authorized an aggravated kidnapping conviction based on an unalleged method of abduction. Moreover, the application paragraph charged a distinct, lesser offense: kidnapping. This was not an incidental omission or mistake, but went to the very basis of the case and exposed appellant to conviction of a specific offense without requiring the jury to reach a verdict on the essential elements of that offense as charged in the indictment. Nothing in the record alleviated this harm, and the State's closing argument further misled the jury.

We hold that the charge errors were egregiously harmful because they affected the very basis of the case and deprived appellant of a valuable right: the charge authorized the jury to convict him of aggravated kidnapping without requiring the jury to find the elements of aggravated kidnapping, as restricted by the indictment, beyond a reasonable doubt. These errors effectively denied appellant a fair and impartial trial. *See Sanchez*, 209 S.W.3d at 125; *Riley*, 447 S.W.3d at 931; *Robinson*, 266 S.W.3d at 15; *Green*, 233 S.W.3d at 85; *Frost*, 25 S.W.3d at 401. We therefore sustain appellant's first issue.

Having sustained this issue, we do not reach appellant's additional complaints on appeal.[5] Accordingly, we reverse the trial

---

**5.** Although appellant's fourth issue seeks the greater relief of an acquittal on the ground that the evidence is insufficient to support the verdict under any of the theories presented in the charge, appellant does not explain in his opening brief why there is insufficient evidence of the secreting-or-holding method of abduction or of the aggravating intent to violate or abuse the complainant sexually—the elements that would be included in a hypothetically correct jury charge. We therefore do

court's judgment and remand the case for a new trial.

not consider this issue. *See* Tex. R. App. P. 38.1(i).