**Opinion issued April 30, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-01043-CR

————————————

**ETHANIEL  FARRAR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1480992**

---

## MEMORANDUM OPINION

A jury convicted Ethaniel Farrar of aggravated sexual assault after receiving evidence that Farrar forced a woman, at gunpoint, to engage in sexual acts in the back seat of Farrar's vehicle and more evidence of two extraneous offenses with similar facts. Farrar was sentenced to 45 years' confinement.

Farrar seeks a reversal of his conviction and remand for a new trial on two bases. First, he contends there was error in the court's charge because it permitted the jury to convict him without finding all elements of the offense beyond a reasonable doubt. He argues the record meets the egregious-harm standard that applies to this unobjected-to error. Second, he contends the trial court erred by refusing to instruct the jury on the lesser-included offense of aggravated assault.

We affirm.

## Trial

The complainant, Grace,[1] was the first witness to testify. She opened her testimony by discussing her past heroin addiction, her three drug-related convictions between 2006 and 2017, and her conviction for prostitution in June 2017. Grace testified that she worked as a prostitute for several years, including the year of this offense, which occurred on May 17, 2015.

Grace then testified about the assault. She stated that she had gotten lost and was walking along Highway 59 to get her bearings. After she had walked about 45 minutes, a car pulled up and a man asked her if she was working. She said yes and got into his car. He drove behind some vacant buildings. They discussed an agreed fee for her to have sex with him, and both moved to the back seat of the SUV. Grace

---

[1]     We refer to the complainant and the two women who testified to extraneous offenses by a pseudonym for their privacy and ease of reading.

thought he was reaching into the pocket of a nearby jacket for a wallet but, instead, he pulled out a handgun. He asked if they were going to have a problem, and she replied that they were not.

Grace testified that the man made her perform oral sex. She stated she did not want to do it, she was crying throughout the episode, and she did it only because he had a gun. He then told her to lie on her back, and she complied. She testified he inserted his penis into her vagina for several minutes. Then, he told her he was going to take his condom off and asked her if she had a problem with that. Because she was concerned about the gun, she told him she did not, but she testified she was thinking, "My God, I hope this man doesn't have AIDS." Afterward, he drove back to the location where he had picked her up. He pulled his vehicle over, told her to get out, and left. Grace noted his license plate number as he left.

Grace ran to a nearby store, repeating his license plate number to herself. When she got there, she wrote the number on a brown paper bag. She kept walking, looking for her apartment. When she got to her apartment, she told her roommate what had happened. Her roommate took her to the apartment security officer, who took her to the hospital.

At the hospital, the medical staff performed a rape examination and took her clothes as evidence. She spoke with a nurse and a police officer. Afterward, her parents took her from the hospital to their home. About a month later a police

investigator met with her. The investigator showed her a photo array, and she selected the photo of the person who assaulted her. She testified she recognized him from his eyes and nose. She initialed the array to reflect her selection. Grace then identified Farrar in the courtroom as the person who sexually assaulted her.

Grace admitted that, in the beginning of the investigation, she did not tell the police that she was a prostitute or that she entered Farrar's car, initially, intending to have sex for money. She explained, "I felt like he wouldn't get in trouble for what he did to me if I said that."

On cross-examination, Farrar's counsel questioned whether Farrar made threatening statements about using the gun against Grace during sex. She replied, "No, but it wouldn't take no time for him to grab the gun after somebody has already threatened you with a gun. I mean you pretty much do whatever they ask you to do unless you want to die or take a chance of dying."

On re-direct, the prosecutor focused on lack of consent, asking Grace why she had oral sex and vaginal sex with Farrar. She responded, "Because I felt like my life was in danger if I didn't . . . [b]ecause he had a gun."

A physician's assistant and the Sexual Assault Nurse Examiner (SANE nurse) testified about Grace's hospital visit and exam. Next, a DNA analyst with the Houston Forensic Science Center testified. She compared the DNA collected during Grace's SANE exam to a buccal swab collected from Farrar once he became a

4

suspect. She stated that Farrar could not be excluded as a source of DNA and the chance of another person equally matching the DNA was extremely low.

Next, two extraneous-offense witnesses, Sarah and Jennifer, testified. The trial court instructed the jury on the limited admissibility of their testimony. *See Blackwell v. State*, 193 S.W.3d 1, 15–16 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (discussing admissibility of extraneous-offense evidence probative of appellant's intent when extraneous acts are sufficiently similar to the alleged sexual misconduct in the charged offense). Both women testified that they were prostitutes in 2015 and, while each was walking near Bissonnet, in the general area where Grace was picked up, a black man, who they identified in the courtroom as Farrar, approached them for sex. Both women testified that Farrar pulled a gun on them and forced them to have sex. The SANE nurse who testified earlier was recalled to testified again. She testified that she had performed a SANE examination on Sarah as well. The State recalled the DNA analyst to testify again. She stated that she compared Farrar's DNA to the DNA collected during Sarah's SANE exam, that Farrar could not be excluded as a source of the DNA, and that the chance of another person equally matching the DNA was extremely low.

A second SANE nurse testified about performing a SANE exam on Jennifer. And a second DNA analyst testified about comparing Farrar's DNA sample to the DNA collected in Jennifer's SANE exam. She testified that Farrar could not be

excluded as a source of the DNA and that the chance of another personal equally matching the DNA was extremely low.

Farrar testified next. He stated that the Bissonnet area was known for prostitution and he would drive through the area because he hired prostitutes. According to Farrar, he was in the area on May 17 but not actively looking for a prostitute. He pulled into a parking area, and Grace approached his car, opened the door without saying anything to him, and began touching him. He said Grace began performing oral sex on him as a test to make sure he was not a police officer. She then quoted him a price for basic sex. He did not have that much money in his wallet, but he understood from her comments she would lower her price. He testified that, without fully reaching an agreement on price, the two moved to his back seat, Grace continued with oral sex, and then they had vaginal sex. Afterward, Grace asked for more money than her earlier quote and wanted him to drive to an ATM machine. He offered her lower than her quote, but she did not agree to that amount.

As they drove from the parking lot, Grace began speaking with a man on the phone. Farrar became concerned he was being set up and was fearful a pimp might harm him. He stopped his car and told Grace to get out.

Farrar testified the sex was consensual. He was supposed to pay Grace, but he did not have the amount of money she originally quoted or the higher amount she

wanted afterwards. He did have $40, but he did not pay her even that amount. He described the sex as consensual and testified he did not have a gun.

Farrar was asked about Jennifer and Sarah next. Farrar conceded he had sex with Jennifer and Sarah a couple of weeks apart in April 2015, which would have been a couple of weeks before he had sex with Grace. He said he negotiated a price with each and had consensual sex with each. He testified he left money on his console both times, but each disputed either the amount of money he owed or the amount of time that money paid for. According to Farrar, instead of taking the money he left on the console, each left his vehicle without the money and later accused him of sexual assault.

Both sides rested and closed. Farrar requested the court to instruct the jury on the lesser-included offense of aggravated assault, and his request was denied. The reporter's record notes the court's charge was read to the jury, but the reading was not transcribed.

Farrar's counsel gave his closing argument first. He conceded that Farrar had sex with the three women and that it was Farrar's DNA that was recovered in the SANE exams. He called into question the women's credibility based on their past life choices and records of conviction. He argued it was not believable that Farrar, a large man, held a gun to a woman's head during a sex act and still managed to support his weight. He then suggested that the prostitutes were "protecting their own

7

kind" and getting back at a person known in their community for not paying for services. He argued they had "come up with some charge about a gun," and "the State's brought the charges about a gun," but there was no gun. In sum, Farrar and Grace had consensual sex without a gun present, and, while Farrar "doesn't pay for sex with prostitutes," that "does not make him a rapist."

In its closing, the State referred to Farrar's earlier characterization of the disputes with Sarah and Jennifer—that they were focused on time and money—and argued that Farrar's story made no sense: why would two prostitutes, who supposedly only cared about their time and money, have uncoerced sex and leave the money laying on the console when they got out of Farrar's vehicle. The State argued Farrar was lying and that what really happened was he forced these three women to have sex with him at gunpoint—there was never any money.

The jury found Farrar guilty of aggravated sexual assault of Grace.

The punishment phase began with a stipulation on Farrar's earlier convictions for (1) unlawfully carrying a weapon in June 2007, (2) assault in September 2007, and (3) unlawfully carrying a weapon in June 2017. Grace and Jennifer testified again. Farrar called a high school teacher and his mother to testify on his behalf. Both sides gave closing arguments. The jury was told that the punishment range was between 15 and 99 years or life because of Farrar's prior convictions. The jury assessed punishment at 45 years' confinement. Farrar appealed.

**Charge Error**

In his first issue, Farrar argues the trial court erroneously charged the jury on the offense of aggravated sexual assault because the application paragraph of the court's charge included the word "or" instead of "and" when it added the aggravating factor to the list of elements the State had to prove beyond a reasonable doubt. Farrar concedes he did not object to the error at trial. He further concedes that, without a proper objection, the error is not reversible unless it reaches the level of egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc). He argues that standard is met.

The State concedes the listing of elements was error but argues the egregious-harm standard is not met. We agree. To explain why the error does not reach the level of egregious harm, we first consider the elements of the offense of aggravated sexual assault, as charged in the indictment. We next review the court's charge to the jury and the conceded error. And we finally consider the standard for egregious harm and conduct an analysis of whether that standard is met.

**A.     Elements of aggravated-sexual-assault offense, as charged in the indictment**

A person commits the offense of aggravated sexual assault if, among other possibilities, the person (1) intentionally or knowingly (2) causes the penetration of the sexual organ of another person by any means, (3) without that person's consent, and one of several aggravating factors is met. TEX. PENAL CODE

§ 22.021(a)(1)(A)(i), § 22.021(a)(2). Lack of consent is shown with evidence the actor compelled the other person to submit or participate by (a) the use of physical force, violence, or coercion or (b) threatening to use force or violence against the other person or to cause harm to the other person, and the other person believed that the actor has the present ability to execute the threat. *Id.* § 22.011(b)(1)–(2). Farrar was charged under the first form of lack of consent—force and violence. The list of possible aggravating factor includes if the person uses or exhibits a deadly weapon, like a gun, in the course of the sexual assault. *Id.* § 22.021(a)(2)(A)(iv).

Bringing those elements together, Farrar's indictment alleged he did "[1] intentionally and knowingly [2] cause the penetration of the sexual organ of [Grace] by placing his penis in the sexual organ of [Grace], [3a] without the consent of [Grace], namely, the Defendant compelled [Grace] to submit and participate by the use of physical force and violence and [4] in the course of the same criminal episode, the Defendant used and exhibited a deadly weapon, namely a firearm."

## B.    The court's charge to the jury and conceded error

The court's charge opened with a correct recitation of the necessary elements to convict for aggravated sexual assault. The charge also referred to the correctly worded indictment, which had been read to the jury at the beginning of the trial. In the middle application paragraph, though, the charge misstated the elements. The application paragraph read as follows:

10

Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of May, 2015, in Harris County, Texas, the defendant, Ethaniel Farrar, did then and there unlawfully, [1] intentionally or knowingly [2] cause the penetration of the sexual organ of [Grace], by placing his penis in the sexual organ of [Grace], [3a] without the consent of [Grace], namely, the defendant compelled [Grace] to submit or participate by the use of physical force or violence, or [4] in the course of the same criminal episode, the defendant used or exhibited a deadly weapon, namely a firearm, then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

The parties agree it was error to add the aggravating factor after the disjunctive term "or" instead of after the conjunctive term "and." Had the term "and" been used, it would have correctly informed the jury that all elements were required. *See* TEX. PENAL CODE § 22.021(a)(1)(A)(i) (specifying sexual contact), § 22.021(a)(2)(A)(iv) (listing use or exhibition of firearm as aggravating factor).

Because the parties agree the use of the term "or" instead of "and" was error, we next consider harm.

## C.    Egregious harm

When, as occurred here, a defendant fails to object to charge error or states he has no objection to a charge, the reviewing court will not reverse unless the error was so egregious and created such harm that the defendant cannot be said to have had a fair trial. *Martinez v. State*, 190 S.W.3d 254, 259 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Almanza*). Under the *Almanza* egregious-harm standard, the record must show that the defendant has suffered actual, rather than

11

merely theoretical, harm from the charge error. *Almanza*, 686 S.W.2d at 174. Charge error is egregiously harmful if it effectively denies a fair and impartial trial. *Id.* at 172. It is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006); *Uddin v. State*, 503 S.W.3d 710, 715 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). The appellate court determines harm from its review of (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information. *Martinez*, 190 S.W.3d at 259–60 (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

### 1.    The entire charge

The court's charge began by identifying the offense Farrar was charged with committing, stating his plea of not guilty, and correctly listing all required elements the State must prove:

> A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent; and if

the person uses or exhibits a deadly weapon in the course of the same criminal episode.

An aggravated sexual assault is without the consent of the other person if: (1) the defendant compels the other person to submit or participate by the use of physical force or violence; or (2) the defendant compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the defendant has the present ability to execute the threat.

"Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its designed, made, use or intended use is capable of causing death or serious bodily injury.

After defining a few more terms, the charge's application paragraph applied the law to the facts of the particular prosecution but replaced the final "and" with the word "or":

Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of May, 2015, in Harris County, Texas, the defendant, Ethaniel Farrar, did then and there unlawfully, intentionally or knowingly cause the penetration of the sexual organ of [Grace], by placing his penis in the sexual organ of [Grace], without the consent of [Grace], namely, the defendant compelled [Grace] to submit or participate by the use of physical force or violence, *or* in the course of the same criminal episode, the defendant used or exhibited a deadly weapon, namely a firearm, then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant.

(Emphasis added.) After a few more instructions, the charge closed with the following language:

13

Your sole duty at this time is to determine whether the defendant is guilty or not guilty under the indictment in this cause and restrict your deliberations solely to that issue.

Thus, the court's charge correctly listed all elements of the offense on its first page, misstated the elements by changing the word "and" to "or" in the application paragraph, and then referred to the indictment and instructed the jury to determine whether Farrar was guilty or not guilty under the correctly phrased indictment.

The correct statement of elements elsewhere in the charge distinguishes this case from others where egregious harm has been found. *See Uddin*, 503 S.W.3d at 719 ("There is simply no way that each of the twelve lay jurors, when faced with an error in the abstract portion of the charge, a different error in the application paragraph, and an indictment that did not match either one, somehow identified both errors . . . and arrived at a correct understanding of what he or she had to find in order to convict appellant."); *cf. McClay v. State*, No. 11-10-00065-CR, 2012 WL 642849, at *5 (Tex. App.—Eastland Feb. 29, 2012, no pet.) (mem. op., not designated for publication) ("The law was misstated in the introduction and in the application and was not correctly stated anywhere within the charge.").

When a court's charge correctly states the elements of an offense and a reasonable jury could refer to that portion of the court's charge to mitigate any confusion by an incorrect statement of elements elsewhere in the court's charge, the fact that the charge contains a correct statement of elements reduces the likelihood

that harm reaches the level of egregiousness. *See Ngo v. State*, 175 S.W.3d 738, 752 (Tex. Crim. App. 2005) (affirming holding of egregious harm, in part, because "the original jury charge error was not corrected or ameliorated in another portion of the charge"); *Uddin*, 503 S.W.3d at 717.

## 2.    The state of the evidence

The complainant, Grace, testified she had sex with Farrar only because he had a gun and she was afraid he would use the gun to harm her. The extraneous-offense witnesses also testified Farrar had a gun and they had sex with him only because of the threat of the gun. Grace did not testify to any other form of force or violence or about any other weapons being present. The only theory presented to the jury by the prosecution and the only evidence in the record in support of that theory is that the force and violence were achieved by Farrar's use and exhibition of a gun.

Farrar did not deny having sex with Grace or the other two women. He admitted it was his DNA that was collected in all three SANE exams. He asserted that all three women consented to sex with him and then had a fee dispute after the fact that resulted in none of the women taking his money in exchange for the completed sex acts. He denied forcing sex on them or owning or using a gun.

Thus, the jury was presented two opposite theories: under one, Farrar forced Grace—and earlier, the two other women—to have sex at gun point; under the other, Grace—and the other two women—consented to sex under the expectation they

15

would get paid, became angry when they were not paid as expected, and wrongly accused him of sexual assault because of his nonpayment.

These were the only two versions presented to the jury. The jury evaluated the evidence and chose one while rejecting the other. This case does not reasonably involve the possibility that the jury believed Farrar used some form of coercion, force, or violence but did not use or exhibit a gun in the process. The evidence simply did not provide for that possibility. *Cf. Uddin*, 503 S.W.3d at 718 (explaining various ways the facts of that case permitted jury to reach verdict of guilt without finding all required elements). In other words, as the case was presented to the jury, the jury was going to either believe one version of events or the other. There was no middle ground.

### 3. Arguments of counsel

Farrar's theory of the case was that he approached Grace for sex, she was willing to engage in sex for a fee, and, therefore, the sex was consensual. He denied having a gun. During closing argument, Farrar's counsel questioned the women's credibility and argued they were wrongly accusing Farrar because they did not like his nonpayment after consensual sex acts.

The prosecutor's closing focused on the lack of motive for these three women to endure a rape exam, face a police investigation, and testify to a room full of people about their past drug use and prostitution. The only reasonable explanation, she

16

argued, was that they were being truthful. The prosecutor highlighted that none of these three women knew each other but all alleged they were sexually assaulted in the same area of town within weeks of each other under very similar facts, that Farrar pointed a gun at them while he forced them to have sex, and that they went to the hospital afterward for medical care and a SANE exam. The prosecutor focused on Farrar's admission he had sex with all three women and his admission it was his DNA that was recovered in all three SANE exams.

Finally, the prosecutor suggested that Farrar's story made no sense. She asked the jury to consider whether it made sense that, as Farrar alleged, Sarah and Jennifer would have gotten into a dispute with Farrar, after sex, about whether he was paying enough for the sex act agreed to, yet, when faced with inadequate payment, they would have willingly left his vehicle without any payment, as Farrar stated.

Neither counsel's argument suggested the evidence supported a theory of coercion, force, and violence without use or exhibition of a gun. *Cf. Taylor v. State*, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) (in evaluating charge error, noting that defensive theory was that no sexual abuse occurred at any time; therefore, it was unlikely the jury thought some occurred but not as the complainant alleged, and concluding charge error did not result in egregious harm).

**4.     Other relevant information**

The indictment was read to the jury. It correctly listed all elements and alleged that the sexual assault was without Grace's consent and that a deadly weapon was used.

**5.     Egregious harm not established on this record**

A review for egregious harm is fact intensive and determined on a case-by-case basis. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). The indictment was read to the jury, and it correctly listed all necessary elements for a conviction of aggravated sexual assault. Likewise, the opening of the court's charge correctly listed all necessary elements for a conviction of aggravated sexual assault. In the application paragraph, though, the charge added the aggravating factor with the term "or" instead of "and." But the jury was presented with an all-of-nothing defensive theory of the case that excluded the possibility of any middle ground. There were only two possible outcomes: either the jury was going to believe Grace (and Sarah and Jennifer) or it was going to believe Farrar. There was no possibility the jury would have resolved these facts to conclude Farrar forced Grace to engage in sex without her consent but did not have a gun or that he had a gun but did not use force or violence to coerce sex without consent. In other words, there is no possibility the jury found the first, second, and fourth elements without the third

element or that it found the first, second, and third elements without the fourth element.

The jury unquestionably found Grace's testimony credible because it rejected Farrar's explanation and found him guilty. Grace's testimony supported a finding of each necessary element. The jury, on two occasions, was correctly informed of all necessary elements. Under these facts, we conclude the error in joining the aggravating factor to the list of elements with the disjunctive "or" did not result in egregious harm to Farrar. On these facts, we conclude the error did not affect the very basis of the case, deprive Farrar of a valuable right, or vitally affect a defensive theory. *See Sanchez*, 209 S.W.3d at 121; *Uddin*, 503 S.W.3d at 715.

Because the record does not support a conclusion of egregious harm, we overrule Farrar's first issue.

**Lesser-Included Offense**

In his second issue, Farrar argues the trial court erred by denying his request for a jury instruction on aggravated assault "because the allegation of a non-consensual penetration was functionally equivalent to an allegation of offensive-contact-assault."

**A.     Standard of review**

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim.

19

App. 2012). First, we determine whether the offense qualifies as a "lesser included offense" under Texas Code of Criminal Procedure Article 37.09. TEX. CODE CRIM. PROC. art. 37.09; *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). An offense is a lesser-included offense if: (1) it is established by the proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. art. 37.09(1)–(4). This is a question of law that does not depend on the evidence presented at trial. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). We look at the facts and elements as alleged in the charging instrument to determine whether there exists a lesser-included offense of the greater charged offense. *Id.*

Next, we determine whether there was some evidence that would have permitted the jury to rationally find that, if the defendant was guilty, he was guilty only of the lesser offense. *Id.* at 536. Although the threshold showing for an instruction on a lesser-included offense is low—more than a scintilla of evidence— the evidence must establish that the lesser-included offense was a valid and rational

20

alternative to the charged offense. *Id.* "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

## B.    Aggravated assault is not a lesser-included offense as charged

The elements of the charged offense of aggravated sexual assault, as modified by the particular allegations in the indictment, are that Farrar (1) intentionally and knowingly (2) penetrated Grace's sexual organ with his sexual organ (3) without her consent in that he compelled her to submit and participate by the use of physical force and violence, and (4) in the course of the same criminal episode, Farrar used and exhibited a deadly weapon, namely a firearm. TEX. PENAL CODE § 22.021(a)(1)(A)(i); § 22.021(a)(2)(A)(iv).

The statutory elements of the offense of aggravated assault, as requested by Farrar, are that Farrar (1) intentionally or knowingly (2) caused physical contact with Grace (3) when Farrar knew or should reasonably have believed that Grace would regard the contact as offensive or provocative, and as the aggravating factor, (4) Farrar used or exhibited a deadly weapon during the commission of the assault. TEX. CODE CRIM. PROC. art. 22.01(a)(3) (assault); 22.02(a)(2) (listing aggravating factors, including using or exhibiting a deadly weapon during the assault).

21

The second offense—aggravated assault—requires proof that Farrar knew or reasonably believed Grace would regard the contact as offensive or provocative at the time of the contact. The charged offense did not require such proof. *Compare* § 22.021(a)(3), *with id.* §§ 22.021(a)(1)(A)(i), 22.021(a)(2)(A)(iv). Because this additional fact must be proven for aggravated assault but not for aggravated sexual assault, aggravated assault is not a lesser-included offense in this case under article 37.09(1). *See Ramos v. State*, 981 S.W.2d 700, 701 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). Even if there was some evidence Farrar knew or reasonably believed Grace would regard his contact as offensive, that evidence is immaterial. *See id.*; *cf. Chabrier v. State*, 592 S.W.3d 188, 195 (Tex. App.—Austin 2019, no pet.) (because appellant could be guilty of penetrating the complainant's sexual organ without her consent even if there was no evidence of his knowledge or belief that complainant would regard contact as offensive or provocative, offensive-contact assault is not lesser-included offense of sexual assault); *Trejo v. State*, 242 S.W.3d 48, 50–52 (Tex. App.—Houston [14th Dist.] 2007) (aggravated assault is not lesser-included offense of charged aggravated-sexual-assault offense because serious bodily injury was not "fact required" to establish "physical force and violence" and "threatening to use force and violence" allegations in indictment), *overruled on other grounds*, *Trejo v. State*, 280 S.W.3d 258 (Tex. Crim. App. 2009). These two offenses contain distinct elements requiring different proof; thus, we conclude aggravated

22

assault is not a lesser-included offense under article 37.09(1). *See McKithan v. State*, 324 S.W.3d 582, 595 (Tex. Crim. App. 2010) (Cochran, J., concurring) (stating that use of "physical force is entirely different from intending to touch someone in a rude, displeasing, or obnoxious manner. Offensive-contact assault is therefore not a lesser-included offense of an aggravated sexual assault offense that explicitly requires the use of physical force and violence").

Nor can aggravated assault be a lesser-included offense under any of the other three provisions of article 37.09: aggravated assault differs more than simply in degree of injury, it differs more than solely by having a less culpable mental state, and it does not consist of an attempt to commit aggravated sexual assault. *See* TEX. CODE CRIM. PROC. art. 37.09(2)–(4).

Because aggravated assault is not a lesser-included offense of aggravated sexual assault, as charged in this case, we overrule Farrar's second issue.

**Conclusion**

We affirm.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Countiss.

Do not publish.  TEX. R. APP. P. 47.2(b).

23