**Reversed and Remanded and Memorandum Opinion filed December 5, 2019.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-17-00939-CR**

**TRADEZSHA BIBBS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1507264**

## MEMORANDUM  OPINION

Appellant Tradezsha Bibbs appeals her conviction for capital murder. In four issues appellant argues (1) she was egregiously harmed by the trial court's omission from the jury charge of an application paragraph on felony murder; (2) the evidence was factually insufficient to support the jury's implicit denial of her insanity defense; (3) the prosecutor committed misconduct by impugning the credibility of the defense expert; and (4) court costs for indigent defense are unconstitutional as applied to appellant. Having reviewed the entire charge, the evidence at trial, the closing

arguments of counsel, and other relevant information in the record, we conclude that appellant was deprived of her valuable right to a jury determination regarding her guilt of felony murder. We therefore reverse the trial court's judgment and remand this case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant's four-month-old child died after suffering injuries as a result of physical abuse. Appellant admitted she abused her child and pleaded not guilty by reason of insanity at trial. The jury convicted appellant of capital murder and sentenced her to life in prison without the possibility of parole.

When appellant was fifteen weeks' pregnant Tiffany Redd, a nurse with the City of Houston Nurse Partnership Program, first met with appellant. The Nurse Partnership Program is a City program in which nurses meet with first-time mothers to help them have healthy pregnancies and healthy babies. The program follows up with mothers and babies until the babies turn two years old.

After appellant had her baby she reached out to Redd for help with stress and postpartum depression. When appellant asked for help Redd consulted a counselor with the City program and contacted Child Protective Services. Redd also contacted the Harris County Mental Health Association (sometimes referred to as MHMRA) because appellant expressed a desire to harm herself. CPS made arrangements for someone to be with appellant and the baby at all times because they were afraid appellant would harm herself or the child. Subsequent events reflect that at some time appellant was alone with the child, but the record does not reflect how this came about.

When the child was three months old, Officer Davis of the Houston Police Department was assigned to investigate an incident when the child was brought into

2

the hospital spitting up blood. CPS was notified when medical professionals at the hospital also noticed bruising on the child's face. Davis interviewed appellant who told Davis she was stressed and fatigued with new motherhood. Appellant reported that the child was injured as a result of a narrowly-avoided car accident and a car seat that was not properly secured. Appellant told Davis that the child's father was also a source of stress. After interviewing appellant Davis believed that appellant inflicted injuries on the child out of vengeance against the child's father.

Houston firefighter Greg Kantis was the first responder who was dispatched on a cardiac arrest call on April 13, 2016 at 10:26 p.m. Five minutes later, at 10:31 p.m., Kantis arrived at the Red Carpet Inn where appellant and her child were staying. When Kantis and his crew arrived, appellant was in the bathroom and the child was on the floor just inside the door. Kantis asked appellant what had happened, and appellant told him the child had fallen out of her car seat earlier in the day. Kantis's crew assessed the child and performed CPR in the hotel room. An ambulance unit arrived and transferred the child to Texas Children's Hospital at 11:14 p.m. The child died the next day in the hospital.

Houston Police Officer Shaun Hall was dispatched to Texas Children's Hospital. At the time Hall arrived he learned that the child was in critical condition with life-threatening injuries. Hall questioned appellant about what happened to the child and appellant responded that the child fell out of her car seat earlier in the day. During an extensive interview appellant did not deviate from her story of how the child had been injured.

Detective Elder of the Houston Police Department interviewed appellant at the hospital after the child's death. A recording of appellant's statement was played for the jury. In appellant's statement she told Elder that she and the child were in the hotel when appellant started feeling different. Appellant said she felt as if she "didn't

3

have any care" for the child. Appellant stated that she believed she had postpartum depression and did not seek help because she had no support and "did not believe in postpartum." Appellant admitted she held the child's arms and the child bounced off the bed to the floor "two or three times." Appellant admitted hitting the child in the chest, face and legs at approximately 6:00 or 7:00 that evening. Appellant stated that the child's breathing became irregular in "another couple of hours." Appellant admitted this was not the first time she had hit the child. She began hitting the child when the child was two months old. Approximately one month after the child was born the father moved out and appellant moved in with her grandmother. When appellant's grandmother left appellant had nowhere to live.

After appellant spoke with Elder he told an officer at the hospital that appellant needed psychiatric help and asked that she be admitted for assessment of her mental health. A week and a half later appellant was arrested after her release from the hospital.

Dr. Gerald Harris, a clinical psychologist, met with appellant approximately two months after the death of her child. Harris conducted approximately ten hours of interviews with appellant, reviewed her medical records, and administered tests to assess her emotional status. Harris also administered a test designed to detect whether appellant was malingering. The information from the testing was consistent with postpartum depression with psychotic features and there was no indication of malingering. Harris determined that appellant suffered from postpartum depression with psychotic episodes. In Harris's opinion appellant was "suffering from a disease or defect of the mind such that [she] did not know what she did was wrong."

To rebut Dr. Harris's testimony the State called Dr. David Genac. Genac, a forensic psychologist with the Harris County Mental Health Association met with appellant and reviewed her medical and legal history. Genac did not treat patients

with major depressive disorders and did not consider himself an expert in postpartum depression. Genac did not conduct any psychometric tests on appellant. Genac did not think appellant suffered from psychosis. Genac, "did not find any evidence that there was a serious mental defect at the time of the incident that would make her not know what she was doing was wrong."

Appellant and the State rested and closed their evidence. After the trial court read the court's charge to the jury, the State and appellant gave closing arguments to the jury.

In the abstract portion of the jury charge, the trial court included definitions of murder, capital murder, felony murder, and serious bodily injury to a child. In the application paragraphs of the charge the trial court omitted an application paragraph for felony murder. The trial court also omitted a verdict form for felony murder. Neither party objected to the court's charge. The jury found appellant guilty of capital murder. Because the State did not seek the death penalty appellant was automatically sentenced to life without the possibility of parole. *See* Tex. Penal Code Ann. § 12.31.

## ANALYSIS

In appellant's first issue she argues she was egregiously harmed by error in the jury charge.

## I. Standard of review

In a criminal case, we review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id*.

5

The degree of harm necessary for reversal depends on whether the appellant preserved error by objecting to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). When charge error is not preserved, as in this case, reversal is not required unless the resulting harm is egregious. *Id*.; *see also* Tex. Code Crim. Proc. art. 36.19.

Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). That is, the error must have been so harmful that the defendant was effectively denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 172. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## II.    The jury charge included error in the application paragraph.

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. art. 36.14. Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The application paragraph applies the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). Because the application paragraph specifies "the factual circumstances under which the jury should convict

6

or acquit, it is the 'heart and soul' of the jury charge." *Id*. at 367. "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion." *Reeves*, 420 S.W.3d at 818; *see also Uddin v. State*, 503 S.W.3d 710, 715 (Tex. App.—Houston [14th Dist.] 2016, no pet.)

In this case, appellant was indicted for capital murder for intentionally and knowingly causing the death of her child. *See* Tex. Penal Code Ann. § 19.03(a)(8) (person commits an offense of capital murder if she murders an individual under 10 years of age). The abstract portion of the charge contained definitions of the offenses of murder, capital murder, felony murder, and injury to a child. The application paragraphs of the charge instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that on or about the 16th day of April, 2016, in Harris County, Texas, the defendant, Tradezsha Bibbs, did then and there unlawfully, intentionally or knowingly cause the death of [B.J.-W.R.], a child under ten years of age, by shaking [B.J.-W.R.] with a deadly weapon, namely her hand, then you will find the defendant guilty of capital murder, as charged in the indictment.

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of the lesser offense of intentionally or knowingly causing serious bodily injury to a child.

> Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 16th day of April, 2016, in Harris County, Texas, the defendant, Tradezsha Bibbs, did then and there unlawfully, intentionally or knowingly cause serious bodily injury to [B.J.-W.R.], a child younger than fifteen years of age, by striking [B.J.-W.R.] with or against a deadly weapon, namely, a blunt object, or;

> If you find from the evidence beyond a reasonable doubt that on or about the 16th day of April, 2016, in Harris County, Texas, the defendant, Tradezsha Bibbs, did then and there unlawfully, intentionally or knowingly cause serious bodily injury to [B.J.-W.R.],

7

a child younger than fifteen years of age, by shaking [B.J.-W.R.] with a deadly weapon, namely her hand, then you will find the defendant guilty of intentionally or knowingly causing serious bodily injury to a child.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder on the one hand or serious bodily injury to a child on the other hand, but you have a reasonable doubt as to which of said offenses she is guilty, then you must resolve that doubt in the defendant's favor and find her guilty of the lesser offense of serious bodily injury to a child.

If you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge you will acquit the defendant and say by your verdict "Not Guilty."

The verdict form on the court's charge included forms for the jury to find appellant not guilty, not guilty by reason of insanity, guilty of capital murder, or guilty of serious bodily injury to a child. The charge omitted an application paragraph for felony murder and a form for the jury to find appellant guilty of felony murder.

The trial court included a definition of felony murder in the abstract portion of the charge. The trial court, however, omitted felony murder from the application paragraph of the charge. The charge conference was not recorded; the record does not reflect whether appellant requested the lesser-included offense or the trial court included the definition of felony murder sua sponte. Absent a request from the defendant a trial court has no duty to instruct the jury on a lesser-included offense. *Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010). A trial court does not err by failing to instruct the jury on an issue that was, by virtue of the defendant's silence, simply inapplicable to the case. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see also Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). However, if the trial court undertakes to instruct the jury on a defensive issue, that issue becomes "law applicable to the case," whether the defendant requested it or objected to its absence or not. *Mendez*, 545 S.W.3d at 552–53.

8

In this case, because the trial court included a definition of felony murder in the abstract portion of the charge, the trial court "signaled" that felony murder was "law applicable to the case." *Id.* at 553. By defining felony murder in the abstract portion of the charge the trial court assumed the duty to deliver the charge correctly by including an instruction relating to felony murder in the application paragraph. *Id.* "[I]t is not sufficient," then, "for the jury to receive an abstract instruction on the law and then to render a verdict according to a general conclusion on whether the law has been violated." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977). Excluding the application section deprives the jury of "an unbiased application of the law to the facts of the case." *Id.*

The Court of Criminal Appeals found jury-charge error when a trial court failed to apply its abstract charge on self-defense to the particular facts of the case. *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). In *Barrera*, the trial court issued an abstract self-defense instruction, but did not include an application section instructing the jury to acquit if it had a reasonable doubt as to self-defense. *Id*. Although Barrera did not object to this failure, the court held that "the failure to apply the law of self-defense to the facts of the case" was error, "even under the reasoning of *Posey*." *Id.*

We conclude that the absence of an application paragraph as to felony murder was erroneous as a complete "fail[ure] to apply an abstract instruction to the facts of the case." *See Barrera*, 982 S.W.2d at 416. This is not a situation in which appellant is complaining that the trial court should have, but failed to, instruct the jury on a lesser-included offense. The jury was informed of the law of felony murder but was not informed of the circumstances under which it should convict or acquit appellant of that offense.

9

## III.    This error caused egregious harm.

The State does not dispute that the jury charge was erroneous but argues that the error did not harm appellant. Because appellant did not object to the charge, we may reverse her conviction only if the record shows that the error resulted in egregious harm. *See Almanza*, 686 S.W.2d at 171. In determining whether jury-charge error is egregiously harmful, we consider not only the erroneous portion of the charge, but also other relevant aspects of the trial. *See Sanchez*, 209 S.W.3d at 121. These relevant aspects include: (1) the entirety of the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See id.* Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.*

***Entire charge***. In determining whether charge error is egregiously harmful, we first consider whether a reasonable jury referring to other parts of the charge would find a correct statement of the law or would instead be confused or misled. *Vasquez*, 389 S.W.3d at 371; *Ngo*, 175 S.W.3d at 752 (examining whether error was "corrected or ameliorated in another portion of the charge" or "was compounded by [a] misleading statement" in the charge).

Capital murder occurs when a defendant intentionally or knowingly causes the death of an individual plus a statutorily-defined aggravating factor. *See* Tex. Penal Code Ann. § 19.03(a). *Buxton v. State*, 526 S.W.3d 666, 680 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The applicable defined aggravating factor in this case is when a child is under ten years old. By contrast, felony murder is an unintentional murder committed in the course of a felony. *See Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). The very essence of the felony-murder

rule is to make a person guilty of an "unintentional" murder when she causes another person's death during the commission of a felony, such as serious bodily injury to a child. *See Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007).

The charge failed to instruct the jury that if it found appellant intentionally injured the child but did not intend to kill the child it could find her guilty of felony murder rather than capital murder. The charge limited the offenses for which the jury could find appellant guilty to capital murder or serious bodily injury to a child. Despite the fact that the abstract portion of the charge defined felony murder it did not instruct the jury that it could find appellant guilty of the intervening offense of felony murder if it did not find sufficient evidence to convict appellant of capital murder. The jury's only options were to find appellant guilty of capital murder or serious bodily injury to a child.

The State argues that appellant was not harmed by the omission from the application paragraph because the trial court correctly instructed the jury on the lesser-included offense of serious bodily injury. The State argues appellant was not harmed because both felony murder and serious bodily injury are first-degree felonies, exclude appellant from probation eligibility, and require a defendant to serve half her sentence before becoming eligible for parole. None of this information, however, was given to the jury in the court's charge. In fact, for decades the Court of Criminal Appeals has held that the trial court errs in instructing the jury on punishment options at the guilt-innocence phase of trial. *See Staggs v. State*, 503 S.W.2d 587, 588 (Tex. Crim. App. 1974) ("[I]nclusion of information regarding punishment in the charge at the guilt-innocence stage is improper."); *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a) (providing that trial court shall instruct jury on issue of guilt or innocence, without authorizing jury to pass upon the punishment to be imposed). The fact that the range of punishment for the two lesser-included

offenses is the same does not ameliorate the harm of failing to apply the abstract portion of the charge to the facts of the case. We next consider whether this harm was ameliorated by other relevant aspects of the trial.

**State of the evidence**. The State argues that the evidence supports the jury's finding of capital murder, noting that intent can be inferred from the extent of injuries to the child, the method used to produce the injuries, and the relative size and strength of the parties. *See Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The State further argues that appellant relied on her defense of insanity and did not prove that she never intended to kill the child.

The State is correct in its assertion that the jury could have inferred intent from appellant's actions. However, a charge authorizing conviction on an improper legal theory is not free from egregious error simply because the evidence is sufficient to support the allegations of the indictment. *Uddin*, 503 S.W.3d at 720. When "jurors have been left the option of relying on a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States*, 502 U.S. 46, 59 (1991).

The record reflects appellant's admission that she injured her child. The medical examiner testified to the extent of the child's injuries and their life-threatening nature. The evidence also showed that appellant called 911 in an attempt to save her child. By raising a defense of insanity appellant placed her culpable mental state at issue. *See Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994); *Williams v. State*, 502 S.W.3d 262, 267 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The trial court's erroneous charge deprived the jury of the option to find that appellant acted intentionally but lacked the intent to kill her child. The evidentiary factor therefore weighs in favor of a finding that the charge error caused egregious harm.

***Jury arguments.*** Both prosecutor and defense counsel primarily argued the major contested issue in this case: whether appellant could be found not guilty by reason of insanity. Both sides also argued that if the jury found appellant intended to harm her child but not cause her death, they should find appellant guilty of serious bodily injury to a child.

The prosecutor, however, compounded the error in the application paragraph by making the following remarks:

> Remember we talked about committing an act clearly dangerous to human life. You're going to see that in felony murder. Well the felony is serious bodily injury to a child. So if you commit an act clearly dangerous to human life, even if you didn't intend it to kill the child you commit that to human life which did cause the death of the child you are still guilty of capital murder 'cause it's a child and that's important.

On appeal the State admits the prosecutor misstated the law. By misstating the law, the prosecutor misled the jury to believe that if it found appellant intended to injure her child but did not intend to cause the child's death the jury must find appellant guilty of capital murder. The State attempts to excuse this misstatement of the law by pointing out that there were two prosecutors and the second prosecutor correctly stated the law to the jury. We note, however, that the correct statement of law was during the State's opening argument and the incorrect statement of law was made during the State's final closing just before the jury began to deliberate. Therefore, just before the jury retired to deliberate the prosecutor misstated the law by telling them that they should find appellant guilty of capital murder even if she did not intend to cause the child's death.

Considering the prosecutor's misstatement of the law, it is no exaggeration to say that appellant was deprived of her valuable right to have a jury determination of every element of the lesser offense, and that one of her defensive theories was vitally

affected, to her substantial detriment. For these reasons, the closing arguments weigh in favor of a holding of egregious harm.

*Other relevant information from the record.* Capital murder, if the State does not seek the death penalty, is punishable by life in prison without the possibility of parole. *See* Tex. Penal Code Ann. § 12.31. Felony murder is a first-degree felony punishable by five to ninety-nine years in prison plus the possibility of a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.32. Unlike a person convicted of capital murder, a person convicted of felony murder may be eligible for parole at some time during her sentence. *See* Tex. Gov't Code Ann. § 508.145. By failing to include felony murder in the application paragraph of the charge, the trial court denied appellant the right to have the jury consider a lesser punishment than life without parole.

We further note that the charge not only omitted a paragraph applying felony murder to the facts of the case but also omitted a verdict form on which the jury could have found appellant guilty of felony murder. Despite the fact that the charge defined felony murder, the jury was not instructed on how to apply the evidence it heard to the offense of felony murder. Moreover, even if the jury could have divined this knowledge from the erroneous charge, they were never asked a question as to whether appellant was guilty of felony murder. We sustain appellant's first issue.

## CONCLUSION

We hold that the charge error was egregiously harmful because it affected the very basis of the case and deprived appellant of a valuable right: the charge removed the ability of the jury to determine that appellant harmed her child but did not intend to kill her. This error effectively denied appellant a fair and impartial trial. *See Sanchez,* 209 S.W.3d at 125. We therefore sustain appellant's first issue.

14

Having sustained this issue, we do not reach appellant's additional complaints on appeal. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings. *See* Tex. R. App. P. 43.2(d).


/s/    Jerry Zimmerer
        Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).