**Opinion issued July 18, 2023.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00646-CR**

———————————

**DAVID IGNACIO CRISTAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 19-CR-1313**

## MEMORANDUM OPINION

A jury found appellant David Ignacio Cristan guilty of the felony offense of

continuous sexual abuse of a child and assessed his punishment at ninety-nine years'

imprisonment.[1]  In his sole issue on appeal, Appellant argues the trial court abused its discretion by submitting a jury charge that did not properly instruct the jury on the law applicable to the case.[2]

We affirm the trial court's judgment.

## Background

Appellant David Ignacio Cristan ("Cristan") was charged by indictment with three felony offenses involving two minors, A.D. ("Amy") and J.D. ("Julie").[3]  As to Amy, Cristan was charged by indictment with the felony offense of continuous sexual abuse of a child (trial court cause number 19-CR-1313) and sexual assault of a child (trial court cause number 19-CR-2275). Cristan was also charged by indictment with the felony offense of continuous sexual abuse of a child against Amy's sister, Julie (trial court cause number 19-CR-1312).  Cristan pleaded not guilty to all three charges.

---

[1] TEX. PENAL CODE § 21.02(h) ("An offense under this section is a felony of the first degree, punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.").

[2] Cristan is not challenging the sufficiency of the evidence supporting his conviction for continuous sexual abuse of a child.

[3] In this opinion, we refer to the child complainants and their family members by pseudonyms to protect their privacy.  *See* TEX. CONST. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process").

2

## A. Detective Reynolds

Detective Jimmie Reynolds with the Texas City Police Department ("Detective Reynolds") testified he became involved in the investigation of the case after Carmella Archibald with Children's Protective Services ("CPS") told him she was involved in a case within his jurisdiction in Texas City, Texas. After the initial report, Detective Reynolds learned that the alleged sexual assaults of the two young girls had occurred in Texas City and La Marque, Texas. According to Detective Reynolds, the resulting investigation was a joint effort between the Texas City Police Department and La Marque Police Department because some of the alleged sexual assaults had occurred in La Marque.

Amy and Julie, the two complainants, were interviewed at the Child Advocacy Center in Galveston, Texas ("CAC") by forensic interviewers Cheryl McCarty and Kim Keever. Detective Reynolds, who was present for both interviews, testified that Amy and Julie both made outcries of sexual abuse and identified Cristan as the alleged perpetrator.

Detective Reynolds and Detective Smith ("Detective Smith"), Detective Larry Crow ("Detective Crow"), and Officer Stephen Leacroy ("Officer Leacroy") with the La Marque Police Department visited Cristan's house in La Marque to speak to him and execute a search warrant. Detective Crow with the La Marque Police Department collected several items from Cristan's house including several cell

3

phones and a DVR that was connected to several cameras in the home. According to Detective Reynolds, one of the cell phones had been hidden in the bathroom. After completing the search, Detective Reynolds talked to Cristan and arranged for him to come to the station the following Monday.

That following Monday, Detective Reynolds learned that Cristan had been taken to the hospital because he had attempted suicide. Detective Smith and Detective Reynolds visited the hospital the next day to speak with Cristan. Detective Reynolds testified that after Cristan agreed to speak with them, he questioned Cristan about the events in Texas City, while Detective Smith inquired about the events in La Marque. According to Detective Reynolds, Cristan would "just get real loud" in response to some of his questions and Cristan would make excuses and claim "I don't remember because I black out."

Cristan's interview was captured by Detective Reynolds' body camera, which was sitting on a nearby table in the hospital room. The recording was admitted into evidence as State's Exhibit 1 and played for the jury.

During the interview, Cristan told the Detectives that he lived with his mother and his wife ("Michelle"), and her three children, Amy, Julie, and their younger brother ("Eddie"). Cristan admitted that Amy was his favorite child. According to Cristan, he and Michelle shared a bedroom with Amy, Julie, and Eddie at their home

4

in La Marque.  Cristan and Michelle slept on the bed and the children shared an air mattress.

When the Detectives asked Cristan if he had anything to say about the sexual abuse allegations Amy and Julie had made against him, Cristan shook his head indicating "no."  The Detectives asked Cristan what he thought about Amy and Julie making these allegations against him and Cristan answered, "I don't know."  Cristan told the Detectives he did not know why Amy and Julie claimed he had sexually abused them.

Cristan told the Detectives that he blacks out once a day and he only remembers some things.  When asked to explain when he blacks out, Cristan said, "the other half of my life when all of this stuff happened, supposedly."  The Detectives asked Cristan to clarify whether he was denying the allegations of sexual abuse or he was saying the sexual abuse could have occurred, but he was unsure because he regularly blacks out.  Cristan responded, "I don't know because I black out a lot.  So I seriously don't know."  He told the Detectives that "when I get real horny and black out and go to the restroom and try to finish and I end up being in there for 5-6 hours and I can't finish."  When asked if he remembered what happens before he blacks out, Cristan responded, "You are so horny it is like a blur; you try to put it in something."  The Detectives asked Cristan, "[w]hen you get so horny that

5

everything is blurry, do you think you could have grabbed" Julie or Amy? Cristan started crying and replied, "I don't know. I am just thinking if I did or not."

When asked why he placed a cell phone in the bathroom, Cristan claimed he did so to hear what his family members were talking about.[4] He admitted the cell phone recorded both audio and video but claimed that the phone was positioned such that "you can't see nothing." Cristan, who denied taking inappropriate pictures of Amy and Julie, told the Detectives that one time Amy found him watching pornography on his cell phone.

Detective Reynolds also briefly interviewed Cristan's wife, Michelle. Michelle was cooperative and she did not tell Detective Reynolds anything that conflicted with Amy's and Julie's statements during their forensic interviews at the CAC. Detective Reynolds testified that when he asked Michelle if she knew Amy and Julie were being sexually assaulted, Michelle became visibly upset and denied knowing about the abuse. She then told Detective Reynolds that she did not want to talk to him about her daughters' sexual abuse allegations and she ended the interview. At trial, Detective Reynolds identified Cristan.

---

[4] Cristan also told the Detectives that Amy and Eddie, who were very close, appeared to be hiding something from him and he placed the cell phone in the bathroom because he suspected Eddie and Amy were having an inappropriate relationship.

**B.      Detective Crow**

Detective Crow was with Detectives Reynolds and Smith when they executed the search warrant at Cristan's house. Detective Crow testified he photographed the scene and collected six cell phones, a monitor, and a DVR during the search. According to Detective Crow, they found one cell phone on Cristan's bed, four cell phones between the mattress and the wall, and one cell phone in the bathroom.

**C.      Officer Leacroy**

Officer Leacroy prepared the search warrants for the cell phones collected during the search of Cristan's residence. When he reviewed the contents of the cell phone found in the bathroom, Officer Leacroy found multiple photographs of what appeared to be a naked female juvenile in a bathroom. Officer Leacroy also reviewed the phone's browser history where he found a link for a surveillance camera application that connects two cell phones to create a live surveillance feed, and also saves videos. When he clicked on the link, Detective Leacroy found a video of a naked female juvenile similar to the female in the photographs from the cell phone. According to Detective Leacroy, the female subject appeared to have just gotten out of the shower and she was getting dressed. The video appeared to have been taken in the same bathroom as the photographs. Detective Leacroy believed it was "the juvenile that was in the report."

**D.     Julie**

Julie, who was seventeen years old at the time of trial, testified next. She testified she was five or six years old when she met Cristan, whom she calls her stepfather. Julie testified that she, Amy, and Eddie lived with their maternal grandparents during the week, and they stayed with their mother and Cristan on the weekends. According to Julie, her mother and Cristan initially lived with Cristan's mother in La Marque, then they moved to some apartments in Texas City, and they eventually moved back into Cristan's mother's home in La Marque. Julie testified that Cristan began touching her inappropriately when Cristan and Michelle were first living with Cristan's mother in La Marque, before they moved to Texas City. Julie was nine or ten years old when Cristan first touched her. According to Julie, she was lying in bed with her siblings when Cristan grabbed her wrist and made her touch his penis through his clothes before she could pull her hand away. Later that morning, Cristan told her he did not mean to do it and he was sorry. Cristan also asked her not to tell anyone because "he was afraid of going back to jail." Julie testified about a second occurrence of sexual abuse, when Cristan put his hand down Julie's pants and touched her butt over her underwear.

The third instance of sexual abuse occurred when Michelle and Cristan were living in a two-bedroom apartment in Texas City. According to Julie, Cristan got into bed with her one Christmas Eve, and he touched her on her chest under her

clothes, and then he put his hand down her pants and touched her butt and vagina over her underwear. Julie testified that later that evening, Cristan "pulled out his penis or he was grabbing and like moving it around."

Another time, Cristan, Michelle, and the three children were sleeping in the same room at the apartment when Cristan "tried to touch [Julie's] vagina through the clothes again." On another occasion, Cristan and Julie were in the living room when Cristan pulled Julie's head close to his body and rubbed her face against his penis over his clothes.

Julie testified that the abuse happened "[a] lot. I don't really have a number, but I know it was more, like a lot that it happened." She explained that although Cristan abused her while they were living in his mother's home in La Marque, most of the abuse occurred in Cristan's and Michelle's apartment in Texas City. Julie described other instances when Cristan sexually abused her in more detail on redirect examination.

Julie also testified that she did not tell anyone that Cristan had sexually abused her until Amy told someone that she had also been abused by Cristan. Julie testified she was scared of what Cristan would do if she told. According to Julie, she was scared because Cristan would get angry sometimes and she had seen "what he did" to her mother Michelle when he was angry. Julie never saw Cristan touch Amy inappropriately.

**E.     Amy**

Amy, who was seventeen years old at the time of trial, testified next.[5]  Amy testified she was four or five years old when she first met Cristan, her stepfather. Amy and her siblings, Julie and Eddie, lived with their maternal grandparents during the week and they stayed with their mother Michelle and Cristan on the weekends.

When Amy was fourteen years old, she told her best friend that Cristan had sexually assaulted her, and Amy's friend encouraged her to tell her school counselor. Amy told her school counselor the same day and Amy told her mother about the abuse when she got home from school.  When asked to describe the most recent event of sexual abuse prior to her talking to her counselor, Amy testified that one Sunday morning Cristan pulled down her pants while they were alone in the kitchen at the house in La Marque and he started touching her vagina with his hand and then with his penis.  According to Amy, he rubbed his naked penis between her legs and against the "outside" of her vagina.  When she told him to stop, Cristan told her that it was the only way they could be alone together.  Amy pulled up her pants when Cristan let her go and she ran to the staircase.  When she looked back, Cristan "was right there again and did the exact same thing."

---

[5]     Amy, who is ten months younger than Julie, turned seventeen a few days before trial.

Amy testified that Cristan sexually assaulted her on other occasions. The first incident Amy testified to occurred when she was in the seventh grade. According to Amy, she went to the apartment in Texas City one weekend without her siblings, who had decided to stay at their grandparents' home. Cristan crawled into bed with Amy one night and pulled her pants down while she was sleeping. Amy woke up while Cristan was rubbing his penis on the "outside" of her vagina.

Amy testified that this was not the first time Cristan had touched her vagina. When asked to discuss the next time she recalled Cristan touching her, Amy testified that Cristan touched her breasts with his hands, and while she did not "remember a specific occasion," she "remember[ed] him putting his hands on [her] breast." When asked whether Cristan touched her vagina with his hand over her clothes or under her clothes, Amy testified, "Both. Some occasions it was over. Some occasions it was under."

When asked if Cristan had done anything else inappropriate with her, Amy responded that Cristan "made me put my mouth on his penis." When asked how often this occurred, Amy testified, "Not as much as him touching me." Amy clarified that Cristan put the "[i]nside of my mouth on his penis." According to Amy, this happened at the house in La Marque and the apartment in Texas City.

Cristan also showed her pornography "on some occasions" at both locations. Amy did not remember Cristan ejaculating when he made her touch his penis.

According to Amy, "[o]nly he would make himself ejaculate" and he would do that when he was touching her. Amy testified that the sexual abuse occurred in the living room and her bedroom in the apartment and in the living room of the house in La Marque. Although some of the abuse occurred when other people were in the room, "it was under covers so no one could see it happening." Amy further testified that Cristan sexually assaulted her from the age of five or six until she was fourteen and the assaults occurred every weekend she stayed with him and her mother.

Amy also testified that Cristan told her not to tell anyone, including Michelle, because he did not want to go to jail. Amy testified that when she asked Cristan why he was doing these things to her, Cristan told her he did it with her "because my mom wouldn't do it with him." Amy never told Michelle about the abuse because she did not want Cristan and Michelle to get into an argument. Although she never saw Cristan hit Michelle, Cristan would yell at Michelle and it scared Amy when Cristan and Michelle argued. According to Amy, she, Julie, and Eddie were "all scared of" Cristan.

Amy also testified that she was the girl in the photographs and video found on Cristan's phone. Amy never saw Cristan touch Julie inappropriately.

### F. Tilda Bustamante

Tilda Bustamante ("Bustamante"), Cristan's mother, testified in his defense. According to Bustamante, Cristan and Michelle "became a family" in 2006 and the

couple initially lived with her at her home in La Marque. At some point, Michelle and Cristan moved to an apartment in Texas City, but they later moved back into Bustamante's home in La Marque. When Michelle and Cristan lived with Bustamante, Amy, Julie, and Eddie would stay at Bustamante's home on the weekends. According to Bustamante, the children were happy to be in her home on the weekends, and she did not see, nor was she concerned about Cristan's conduct towards the children.

The jury found Cristan (1) not guilty of the felony offense of continuous sexual abuse of a child against Julie, (2) guilty of the felony offense of sexual assault of a child against Amy, assessing his punishment at confinement for twenty years' imprisonment; and (3) guilty of the felony offense of continuous sexual abuse of a child against Amy, assessing his punishment at confinement for ninety-nine years' imprisonment. In this appeal, Cristan challenges his conviction for the felony offense of continuous sexual abuse of a child against Amy.[6]

## Charge Error

In his sole issue on appeal, Cristan argues the trial court abused its discretion by submitting an erroneous jury charge during the guilt-innocence phase of his trial.

---

[6] Cristan also appealed the trial court's judgment for the felony offense of sexual assault of a child against Amy. On December 22, 2022, this court affirmed the trial court's judgment in that case. *See Cristan v. State*, No. 01-21-00647-CR, 2022 WL 17835670, at *1 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op., not designated for publication).

He argues that the application paragraph in the jury charge incorrectly instructed the jury that the act of touching Amy's sexual organ with his finger constituted the offense of aggravated sexual assault, as opposed to indecency with a child by contact. According to Cristan, the abstract paragraphs in the charge are also misleading and contain numerous misstatements of law because (1) the included definition of "act of sexual abuse" is limited to the offense of aggravated sexual assault of a child and does not include indecency with a child by contact, (2) three factual scenarios are defined accurately to constitute the offense of aggravated sexual assault of a child, (3) the charge does not define "any offense in which the actor contacts the sexual organ of a child with the hand of the actor," (4) the charge does not define the offense of indecency with a child by contact, and (5) the charge does not define "sexual contact," which is an element of the offense of indecency with a child by contact. Cristan argues these "combined errors permitted the jury to convict [Cristan] on incorrect theories of law" and raised the possibility that "individual jurors could have convicted [Cristan] of the offense of Continuous Sexual Abuse of a Child without requiring the State to prove all of the elements of the offense." Cristan argues he was egregiously harmed because the combined errors in the charge "affect[ed] the very basis of the case" and deprived him of a fair trial.

14

The State, which concedes there was error in the charge, argues there is no reversible error because Cristan was not egregiously harmed by the errors. The State argues the errors were not calculated to injure Cristan's rights and Cristan's trial was fair and impartial.

## A.    Standard of Review

We review potential jury charge error using a two-step review to determine whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Vernon v. State*, 571 S.W.3d 814, 826 (Tex. App.—Houston [1st Dist.] 2018, pet ref'd). We first decide whether error exists in the charge. *Ngo*, 175 S.W.3d at 744. If we determine an error exists, we next determine whether sufficient harm resulted from the error requiring reversal. *Id.* The level of harm necessary for reversal depends on whether the appellant properly objected to the error. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When, as here, an appellant fails to preserve error, we review the charge error under the "egregious harm" standard articulated in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171).

"Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotation omitted). Neither party bears

the burden to show harm or lack thereof. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Rather, the appellate court must examine the relevant portions of the entire record to determine whether an appellant suffered actual, as opposed to theoretical harm, as a result of the charge error. *Id.*

When assessing whether an appellant suffered egregious harm as a result of the charge error, courts consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Vasquez v. State*, 389 S.W.3d 361, 368–69 (Tex. Crim. App. 2012) (citing *Almanza*, 686 S.W.2d at 171). Errors that result in egregious harm are "those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows jury charge error was calculated to injure defendant's rights, or unless record demonstrates defendant did not have fair and impartial trial).

It is the trial court's responsibility to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The

purpose of the charge is to inform the jury of the applicable law and guide them in its application to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (internal quotations omitted).

A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Alcoser v. State*, 596 S.W.3d 320, 332 (Tex. App.—Amarillo 2019) (stating that "a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case"), *rev'd on other grounds and remanded*, 663 S.W.3d 160 (Tex. Crim. App. 2022). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Id.* at 338. The application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez*, 389 S.W.3d at 366. The charge's application paragraphs, not the abstract portion, authorize a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Because the application paragraphs specify the factual circumstances under which the jury should convict or acquit, they are often referred to as the "heart and soul" of the jury charge. *Vasquez*, 389 S.W.3d at 367.

**B.     Applicable Law**

Section 21.02(b) of the Texas Penal Code states that a person commits the

offense of continuous sexual abuse of a child if:

> (1)     during a period that is 30 or more days in duration, the person
> commits two or more acts of sexual abuse, regardless of whether
> the acts of sexual abuse are committed against one or more
> victims; and
>
> (2)     at the time of the commission of each of the acts of sexual abuse,
> the actor is 17 years of age or older and the victim is:
>
>> (A)     a child younger than 14 years of age, regardless of whether
>> the actor knows the age of the victim at the time of the
>> offense . . .

TEX. PENAL CODE § 21.02(b).   Relevant to this appeal, Section 21.02(c) further

provides that "for purposes of this section, 'act of sexual abuse' means any act that

is a violation of one or more of the following penal laws:

> . . .
>
> (2)     indecency with a child under Section 21.11(a)(1), if the actor
> committed the offense in a manner other than by touching,
> including touching through clothing, the breast of a child;
>
> . . .
>
> (4)     aggravated sexual assault under Section 22.021 . . .

*Id.* § 21.02(c).

Section 21.11 of the Texas Penal Code, which defines the offense of

indecency with a child, states in relevant part that:

18

(a)	A person commits [the] offense [of indecency with a child] if, with a child younger than 17 years of age . . . the person:

    (1)	engages in sexual contact with the child or causes the child to engage in sexual contact. . .

. . .

(c)	In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

    (1)	any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

    (2)	any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

*Id.* § 21.11(a)(1), (c)(1)–(2).  And Section 22.021, which defines the offense of aggravated sexual assault of a child, states in relevant part that:

(a)	A person commits [the] offense [of aggravated assault]:

    (1)	if the person:

        . . . .

        (B)	regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly:

            (i)	causes the penetration of the anus or sexual organ of a child by any means;

            (ii)	causes the penetration of the mouth of a child by the sexual organ of the actor;

19

(iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

(2) if:

. . .

(B) the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense.

. . .

(f) The minimum term of imprisonment for an offense under this section is increased to 25 years if:

(1) the victim of the offense is younger than six years of age at the time the offense is committed . . .

*Id.* § 22.021(a), (f).[7] The term "child" is defined as "a person younger than 17 years of age." *Id.* § 22.011(c)(1); *see generally id.* § 22.021(b)(1) ("'Child' has the meaning assigned by Section 22.011(c).").

---

[7] Section 22.021(a)(2)(A) of the Texas Penal Code provides an alternative means of committing aggravated sexual assault which is not relevant to this appeal. Section 22.021(a)(2)(A) states:

(A) the person:

20

## C.    Indictment

Cristan was indicted for the felony offense of continuous sexual abuse of a young child. The indictment, which alleges four predicate acts of sexual abuse, states that:

> DAVID IGNACIO CRISTAN, on or about the 1st day of August, 2017 and anterior to the presentment of this indictment in the County of Galveston and State of Texas, did then and there, during a period that was 30 or more days in duration, namely from on or about October 14, 2009 through October 13, 2018, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [Amy], a child younger than 14 years of age, namely:

<hr />

(i) causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode;

(ii) by acts or words places the victim in fear that any person will become the victim of an offense under Section 20A.02(a)(3), (4), (7), or (8) or that death, serious bodily injury, or kidnapping will be imminently inflicted on any person;

(iii) by acts or words occurring in the presence of the victim threatens to cause any person to become the victim of an offense under Section 20A.02(a)(3), (4), (7), or (8) or to cause the death, serious bodily injury, or kidnapping of any person;

(iv) uses or exhibits a deadly weapon in the course of the same criminal episode;

(v) acts in concert with another who engages in conduct described by Subdivision (1) directed toward the same victim and occurring during the course of the same criminal episode; or

(vi) with the intent of facilitating the commission of the offense, administers or provides to the victim of the offense any substance capable of impairing the victim's ability to appraise the nature of the act or to resist the act

TEX. PENAL CODE § 22.021(a)(2)(A).

21

intentionally and knowingly *contact the sexual organ of [Amy],* who was then and there younger than 6 years of age, *with the Defendant's sexual organ*, an act constituting the offense of aggravated sexual assault of a child;

intentionally and knowingly *contact the sexual organ of [Amy],* who was then and there younger than 14 years of age, *with the Defendant's sexual organ*, an act constituting the offense of aggravated sexual assault of a child;

intentionally or knowingly *contact the sexual organ of [Amy],* who was then and there younger than 14 years of age, *with the Defendant's finger*, an act constituting the offense of aggravated sexual assault of a child;

intentionally and knowingly cause the *penetration of the mouth of [Amy],* a child who was then and there younger than 14 years of age, *by the defendant's sexual organ*, an act constituting the offense of aggravated sexual assault of a child.

(Emphasis added). While the first, second, and fourth alleged predicate acts of sexual abuse constitute aggravated sexual assault of a child under Texas Penal Code Section 22.021, the third alleged predicate act of sexual abuse, alleging the contact of Amy's sexual organ with Cristan's finger, does not. The third predicate act of sexual abuse constitutes the felony offense of indecency with a child under Texas Penal Code Section 21.11, not aggravated sexual assault of a child as misstated in

22

the indictment.[8, 9] Aggravated sexual assault of child and indecency with a child, however, both constitute predicate acts of sexual abuse for the felony offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE § 21.02(c)(2), (4).

**D.  Jury Charge**

The abstract portion of the charge dealing with the offense of continuous sexual abuse of a young child against Amy instructed the jury that:

> A person commits the offense of Continuous Sexual Abuse of a Young Child if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age.
>
> "Act of sexual abuse" includes the offense of Aggravated Sexual Assault of Child.
>
> "Child" means a person younger than 17 years of age who is not the spouse of the actor.

---

[8]  *Compare* TEX. PENAL CODE § 21.11(a)(1) ("A person commits [the] offense [of indecency with a child] if, with a child younger than 17 years of age, the person . . . engages in sexual contact with the child. . ."); *id.* § 21.11(c)(1) ("'sexual contact' means . . . any touching by a person . . . of . . . any part of the genitals of a child . . ."), *with id.* § 22.021(a)(1)(B)(iii) (stating person commits felony offense of aggravated sexual assault of child if person "intentionally or knowingly. . . causes the sexual organ of a child to contact . . . the . . . sexual organ of another person").

[9]  We note that Cristan waived any objection or challenge to this "defect, error, or irregularity" in the indictment because he did not object before trial. *See* TEX. CODE CRIM. PROC. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity . . .").

A person commits Aggravated Sexual Assault of a Child if the person intentionally or knowingly causes the sexual organ of a child younger than 14 years of age, to contact or penetrate the mouth of the actor.

A person commits Aggravated Sexual Assault of a Child if the person intentionally or knowingly causes the contact or penetration of the sexual organ of a child younger than 14 years of age by the actor's sexual organ.

A person commits Aggravated Sexual Assault of a Child if the person intentionally or knowingly causes the penetration of the mouth of a child younger than 14 years of age by the actor's sexual organ.

A person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.

With respect only to the offense of Aggravated Sexual Assault of a Child a person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist.

. . .

You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

The application portion of the charge then provide that:

Now if you find from the evidence beyond a reasonable doubt that the Defendant DAVID IGNACIO CRISTAN, did then and there, during a period that was 30 or more days in duration, to-wit: from on or about October 14, 2009 through October 13, 2018, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [Amy], a child younger than 14 years of age,

24

namely: intentionally and knowingly contact the sexual organ of [Amy], who was then and there younger than 6 years of age, with the Defendant's sexual organ, an act constituting the offense of aggravated sexual assault of a child;[10] intentionally or knowing contact the sexual organ of [Amy], who was then and there younger than 14 years of age, with the Defendant's sexual organ, an act constituting the offense of aggravated sexual assault of a child; intentionally or knowingly contact the sexual organ of [Amy], who was then and there younger than 14 years of age, with the Defendant's finger, an act constituting the offense of aggravated sexual assault of a child; intentionally and knowingly cause the penetration of the mouth of [Amy], a child who was then and there younger than 14 years of age, by the defendant's sexual organ, an act constituting the offense of aggravated sexual assault of a child, then you will find the defendant guilty of Continuous Sexual Abuse of a Young Child as charged in the indictment.

E.    **Analysis**

Cristan argues that the jury charge for the offense of continuous sexual abuse of a child against Amy "contained a number of erroneous instructions and omissions of necessary statements of law" because the charge defined:

1.    "Acts of Sexual Abuse" to only include the offense of Aggravated Sexual Assault of a Child. The instruction did not include any other offenses or acts to constitute "Acts of Sexual Abuse."

2.    Aggravated Sexual Assault of a Child to include causing the sexual organ of a child, younger than 14 years of age, to contact or penetrate the mouth of the actor.

---

[10]    The range of punishment for aggravated sexual assault is enhanced to a minimum of twenty-five years if the victim is younger than six years old at the time of the offense. TEX. PENAL CODE § 22.021(f)(1) ("The minimum term of imprisonment for an offense under this section is increased to 25 years if . . . the victim of the offense is younger than six years of age at the time the offense is committed").

3. Aggravated Sexual Assault of a Child to include causing the sexual organ of the actor to contact or penetrate the sexual organ of a child younger than 14 years of age, and

4. Aggravated Sexual Assault of a Child to include causing the penetration of the mouth of a child younger than 14 years of age, by the actor's sexual organ.

Cristan argues the jury charge is also erroneous because it "did not define any offense in which the actor contacts the sexual organ of a child with the hand of the actor." And last, he argued that:

1. The application paragraph incorrectly instructed the jury that Appellant touching the sexual organ of [Amy] with his hand constituted the offense of Aggravated Sexual Assault of a Child.

2. The Charge of the Court did not define Indecency with a Child by Contact, and

3. The Charge of the Court did not define "sexual contact", which is an element of Indecency with a Child by Contact.

In short, Cristan contends the charge is erroneous because it "incorrectly instructed the jury that [Cristan] touching the sexual organ of [Amy] with his hand constituted the offense of Aggravated Sexual Assault of a Child," and the charge did not (1) "define any offense in which the actor contacts the sexual organ of a child with the hand of the actor," (2) instruct the jury that indecency with a child by contact is an act of sexual abuse for purposes of the offense of continuous sexual abuse of a child, or (3) define the offense of indecency with a child by contact.

26

According to Cristan, he suffered egregious harm because these "combined errors permitted the jury to convict [Cristan] on incorrect theories of law," and they "affect[ed] the very basis of the case" depriving him of a fair trial. Cristan argues that the "general nature of much of [Amy's] testimony (responding "yes" to questions about whether things happened) combined with the missing elements from the jury charge" deprived him of a fair trial. He contends the "errors affect[ed] the very basis of the case." According to Cristan, he "was sentenced to 99 years in prison without the possibility of parole on a case that the jury was given incorrect law and instructions that had missing elements of what the State was required to prove beyond a reasonable doubt." He argues he "suffered egregious harm due to the errors in the Charge of the Court."

Cristan did not object to the jury charge as presented. We thus review the charge error under *Almanza*'s "egregious harm" standard. 686 S.W.2d at 171. Errors that result in egregious harm are "those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490. We will not reverse a trial court's judgment unless the record shows that the charge error was calculated to injure the defendant's rights, or the defendant did not have a fair and impartial trial. TEX. CODE CRIM. PROC. art. 36.19.

## 1. 1st *Almanza* Factor: the entire jury charge

Under the first *Almanza* factor, appellate courts assess whether an error in the jury charge resulted in egregious harm by looking at the entire jury charge. *Vasquez*, 389 S.W.3d at 368; *Almanza*, 686 S.W.2d at 171. In other words, courts consider "whether a reasonable jury referring to other parts of the charge would find a correct statement of the law or would instead be confused or misled." *Uddin v. State*, 503 S.W.3d 710, 717 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also Ngo*, 175 S.W.3d at 752 (finding egregious harm and stating "the original jury charge error was not corrected or ameliorated in another portion of the charge; instead, it was compounded by the one misleading statement concerning unanimity that was set out in the jury charge").

Cristan argues that this factor weighs in favor of finding egregious harm because the charge contains numerous errors and "as a whole is misleading, missing necessary elements, and contains numerous misstatements of law." According to Cristan, the jury charge erroneously instructed the jury that the State's allegation that he contacted Amy's sexual organ with his finger constituted the offense of aggravated sexual assault of a child, when the charge should instead have identified the offense as indecency with a child by contact.

Cristan also contends that "the charge failed to define in any way what crime or how a crime is committed between a child and the hand (or finger) of the actor."

28

He argues the jury charge did not define the offense of indecency with a child by contact or instruct the jury that such an offense constitutes an act of sexual abuse for the felony offense of continuous sexual abuse of a child. Cristan argues that this information is not included anywhere in the charge. According to Cristan, the jury was not provided with the element of the offense of indecency with a child requiring a finding of the "intent to arouse or gratify the sexual desire of any person." He argues a correct definition of the offense of indecency with a child by contact would have defined "sexual contact" to include the element of "with the intent to arouse or gratify the sexual desire of any person," which is "an element which is totally absent from the Charge of the Court in this case."[11]

The individual errors in the abstract portion of the charge Cristan identifies do not necessarily weigh in favor of egregious harm. For example, although Cristan is correct that the abstract portion of the charge does not define indecency with a child by contact or reference the definition of "sexual contact" under Section 21.11(c) of the Texas Penal Code, which includes "the intent to arouse or gratify the sexual desire of any person," these omissions do not require reversal. A defendant does not necessarily suffer actual harm when a predicate offense is not defined in the jury

---

[11] Section 21.11 of the Texas Penal Code, which defines the offense of indecency with a child, defines the term "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" "if committed with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE § 21.11(c)(1).

charge. *See Fields v. State*, ___ S.W.3d ___, No. 01-20-00280-CR, 2022 WL 3268525, at *8–10 (Tex. App.—Houston [1st Dist.], Aug. 11, 2022, pet. ref'd) (holding trial court's failure to define underlying offense of robbery in capital murder case was harmless because there was no evidence robbery was not planned, defendant's defense at trial was there was no evidence he should have anticipated that capital murder would have resulted from planned robbery, and defense counsel effectively "conceded [defendant's] role in conspiring to commit a robbery").[12]

Although the aggravated sexual assault of a child statute, under which the jury was instructed, does not expressly identify "intent to arouse or gratify the sexual desire of any person" as an element of the offense of aggravated sexual assault of a child, the Court of Criminal Appeals has recognized that this element is implicitly required for the offense. As the Court of Criminal Appeals explained in *Evans v. State*, 299 S.W.3d 138 (Tex. Crim. App. 2009), the requirement of "intent to arouse or gratify the sexual desire of any person" is expressly stated in the indecency with a child statute because otherwise, the offense of indecency with a child, which applies to "any touching," "could technically apply to even the most legitimate

---

[12]    *See* TEX. PENAL CODE § 7.02(b) ("If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.").

handling of a child, for example, a mother washing or bathing her own child." *Id.*

at 142. "It is only through the proviso of 'intent to arouse or gratify the sexual desire

of any person' that the statute excludes instances of such legitimate handling of the

child." *Id.* But that "proviso is unnecessary in the aggravated sexual assault of a

child statute because both the title (*aggravated* sexual *assault*) of the statute and the

severity of the conduct proscribed (penetration) ensure that the statute would not be

applied to any legitimate handling of the child. *Id.* (emphasis in original). The Court

held that, in the case before it, "indecency with a child by contact [was] a lesser-

included offense of aggravated sexual assault of a child because," even though the

offense of aggravated sexual assault of a child does not include the "intent to arouse

or gratify the sexual desire of any person" as an express element, "lascivious intent

[is] implicitly included." *Cornet v. State*, 417 S.W.3d 446, 450 (Tex. Crim. App.

2013) (explaining Court of Criminal Appeals held in *Evans* that, in that case,

indecency with a child was lesser-included offense of aggravated sexual assault of

child).[13] Thus, the "intent to arouse or gratify the sexual desire of any person"

element for indecency with a child by contact is not wholly missing from the charge

---

[13]     Indecency with a child by contact is not always a lesser-included offense of aggravated sexual assault of a child. *See generally Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) (holding indecency with child was lesser-included offense of aggravated sexual assault of child in that case because "both offenses are predicated on same act"). Neither Cristan nor the State contend that indecency with a child by contact is a lesser-included offense of aggravated sexual assault of a child in this case.

31

because it is implicitly part of the offense of aggravated sexual assault of a child. Moreover, Cristan did not argue at trial that he was not guilty of continuous sexual abuse of a child because he lacked the requisite intent with respect to any of the alleged predicate acts or that the alleged physical contact was innocent and not sexual in nature. Cristan's defense at trial was that Amy had fabricated her claims of abuse because she was allegedly afraid of him, and she wanted him "out of the picture."

While the individual errors Cristan identifies do not necessarily weigh in favor of egregious harm, the aggregate impact of the errors does. The State does not dispute that the abstract and application paragraphs contain errors. The application paragraph, which is the portion of the charge that authorizes a conviction, erroneously instructed the jury that the State's allegation that Cristan contacted Amy's sexual organ with his finger constituted the offense of aggravated sexual assault of a child. This is a misstatement of the law. While the alleged conduct would constitute the offense of indecency with a child by contact, the charge does not mention the offense of indecency with a child by contact, define the elements of the offense in the abstract portion which would have included the definition of "sexual contact," or inform the jury that the offense of indecency with a child by contact is "an act of sexual abuse" for purposes of the offense of continuous sexual abuse of a child, which is the only offense Cristan was charged with in this case.

32

Although the harm resulting from an error in the abstract portion of a charge can be mitigated by the application portion and vice versa, that is not the case here. *See generally Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd) ("While the application paragraph does not make the abstract portion of the charge any less erroneous, . . . on the facts of this case, the correct statement of the law in the application paragraph mitigates against a finding of egregious harm."). On the contrary, the abstract paragraphs of the charge in this case exacerbate the error in the application paragraph and do nothing to mitigate any harm caused by the erroneous instruction. *See Uddin*, 503 S.W.3d at 718 ("Because the error in the application paragraph is an affirmative misstatement of the law rather than an omission, and the abstract portion contains a different error, the charge as a whole indicates that appellant was egregiously harmed.").

Having reviewed the entire charge, we conclude that the first *Almanza* factor weighs in favor of a finding of egregious harm because both the abstract and application paragraphs contain errors and there is nothing elsewhere in the charge itself that mitigates any harm caused by those errors. *See Almanza*, 686 S.W.2d at 171; *see also Vasquez*, 389 S.W.3d at 368.

### 2. 2nd *Almanza* factor: The state of the evidence, including the contested issues and weight of probative evidence

Under the second *Almanza* factor, we assess whether Cristan suffered egregious harm as a result of the charge error by looking at the state of the evidence,

including the contested issues and weight of probative evidence. *Vasquez*, 389 S.W.3d at 368; *Almanza*, 686 S.W.2d at 171. Cristan argues that this factor weighs in favor of finding egregious harm because:

> Much of [Amy's] testimony was general in nature, saying yes things happened, but failing to give much context to the events. [Amy] was unable to give any specific details about the abuse other than the "most recent time" which is outside the time frame of this indictment and the first time.

On the contrary, Amy's testimony was clear and unequivocal. Amy testified that Cristan sexually assaulted her from the age of five or six until she was fourteen and the assaults occurred every weekend she stayed with him and her mother. According to Amy, the sexual abuse occurred in the living room and her bedroom in the apartment and in the living room of the house in La Marque. Although her description of the most recent incident of sexual abuse in the kitchen at the La Marque home was more thorough, she also gave sufficiently detailed accounts of other incidents of abuse. Amy testified that when she was twelve or thirteen years old, she went to Cristan's apartment in Texas City one weekend without her siblings because they had decided to stay at their grandparents' home. Amy testified:

> And it was nighttime and I was sleeping and I woke up and he was laying beside me. I was laying on my side, and he was right behind me laying on his side. And he was doing the exact same thing that happened recently. But this time I wasn't standing up. I was laying on my side.

34

Amy explained that Cristan touched her vagina, just as he had done in the kitchen, but "[t]his time it was only his penis." According to Amy, she woke up while Cristan was rubbing his penis on the "outside" of her vagina. Amy further testified:

> I reacted the same way I did the recent one. I was whining. I was telling him to stop. And I don't remember what he was telling me. But I don't know. I was just whining and telling him to stop.

Amy further testified that sometimes, Cristan touched her vagina with his hand over her clothes and other times he would touch her vagina under her clothes. Amy also recalled that Cristan ejaculated only when he touched her, not when he forced her to touch his penis. Cristan also forced Amy to put his penis inside her mouth. While Amy did not recall how many times Cristan forced her to put his penis inside her mouth, Amy knew that it happened "[n]ot as much as him touching me."

Although corroborating evidence is not required, Amy's claim that Cristan sexually abused her is corroborated by Detective Reynolds's testimony that Cristan hid a camera in the bathroom that captured video and photographs of Amy naked, and Cristan saved these photographs on his phone.

There is no evidence that directly contradicts any of Amy's testimony regarding Cristan's sexual abuse. While Cristan's mother, Bustamante, testified that the children were happy when they visited her home on the weekends and she did not see anything that caused her concern about Cristan's conduct towards the children, Bustamante also did not directly dispute that the assaults occurred.

35

Furthermore, in his statement to police, Cristan never denied that he sexually assaulted Amy and Julie. Rather, Cristan told the Detectives that he did not know if he had sexually assaulted them because he blacks out "the other half of my life when all of this stuff happened, supposedly." Cristan, who acknowledged that the abuse could have happened, told the Detectives that he had no memory of it occurring. *See Kuhn*, 393 S.W.3d at 528 (holding second *Almanza* factor did not weigh in favor of egregious harm when charge error related to timing of incidents, and defendant "focused his defense not on the timing of the incidents but on attacking the credibility of the victim," and thus error did not "vitally effect a defensive theory"); *see also Williams v. State*, 851 S.W.2d 282, 289 (Tex. Crim. App. 1993) (holding no egregious harm resulted where charge error affected issue that "was not a hotly-contested issue at trial" and thus "had minimal impact on appellant's trial").

Cristan also does not contest that, if he abused Amy as she claims, the abuse would have been with the intent of arousing or gratifying his sexual desire. When Cristan spoke to the Detectives, he told them that he did not recall abusing Amy because he regularly blacks out and, the abuse would have had to occur while he was blacked out. Cristan also told the Detectives that he blacks out when he gets "horny" and when "[y]ou are so horny it is like a blur; you try to put it in something." In addition to Cristan's statements to the Detectives, the fact that Cristan saved the

36

naked photographs of Amy on his phone also supports the sexual nature of Cristan's conduct towards Amy.

Elsewhere in his brief, Cristan argues that given the charge as a whole, a juror could have "believe[d] beyond a reasonable doubt that [Cristan] contacted the sexual organ of [Amy] with his finger and that [Cristan] committed one of the other listed acts, but have a reasonable doubt about the other two allegations." In other words, he claims the jury could have concluded that two of the predicate acts of aggravated sexual assault of a child did not occur, leaving the jury with only one predicate act of aggravated sexual assault of a child and the incorrectly identified predicate act of indecency with a child on which to base his conviction. This argument does not carry the day. There is no evidence that any juror found Cristan guilty of the offense of continuous sexual abuse of a child against Amy based on the allegation Cristan contacted Amy's sexual organ with his finger, which the abstract and application paragraphs of the charge erroneously described as constituting the offense of aggravated sexual assault of a child, as opposed to the other three alleged predicate acts of sexual abuse. Cristan's suggestion that his conviction might be based in part on the erroneous portion of the application paragraph of the charge is speculative and amounts to no more than theoretical harm.[14] *See Bradshaw v. State*, 244 S.W.3d

---

[14] Although the error is contained in the abstract and application paragraphs, it is the application paragraphs of the charge, not the abstract portion, that authorize a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

490, 498 (Tex. App.—Texarkana 2007, pet. ref'd) (holding defendant's "argument that the verdict may not have been unanimous is pure speculation" when "record contain[ed] no evidence that the jury's verdict was not unanimous"); *Curry v. State*, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref'd) (concluding defendant's speculation that one juror "might have found sudden passion" was "theoretical harm that we will not credit"). Notably, the jury was not limited to convicting Cristan based on only four occurrences of abuse. Rather, the four predicate acts listed in the indictment and in the jury charge identify four different *types* of sexual abuse. Thus, the jury could have based its verdict on a finding that Cristan committed only one of the predicate acts two or more times during a period that was thirty or more days in duration. Furthermore, because the jury apparently found Amy to be a credible witness, it is doubtful the jury would have believed some of her allegations, but not others. *See Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd) ("Moreover, appellant's defense was that J.W.'s testimony was not credible and that no acts of sexual abuse occurred at any time. If the jurors believed J.W., and it is plain that they did, it is unlikely that they believed that appellant's sexually abusive acts stopped before September 1, 2007.").

After reviewing the state of the evidence, including contested issues and the weight of probative evidence, we conclude that the second *Almanza* factor weighs against a finding of egregious harm. *See Almanza*, 686 S.W.2d at 171; *see also*

38

*Vasquez*, 389 S.W.3d at 368; *see also Johnson v. State*, 981 S.W.2d 759, 763 (Tex. App.—Houston [1st Dist.] 1998, pet ref'd) ("When the evidence is overwhelming, it is obviously less likely the jury was influenced by an erroneous jury instruction than by the weight of the probative evidence itself.").

### 3.     3rd *Almanza* Factor: the arguments of counsel

For the third *Almanza* factor, we consider the arguments of counsel when assessing whether Cristan suffered egregious harm as a result of the charge error. *See Vasquez*, 389 S.W.3d at 368; *Almanza*, 686 S.W.2d at 171. Cristan argues that the State's closing arguments weigh in favor of a finding of egregious harm because the State emphasized to the jury that the charge contained the applicable law, and the State instructed the jury they did not have to agree as to whether a specific act of sexual abuse occurred to find Cristan guilty of the offense of continuous sexual abuse of a child.[15]

The State's closing argument addressed all three of the felony offenses for which Cristan was tried—the felony offenses of continuous sexual abuse of a child against Julie and Amy, and aggravated sexual assault against Amy. The State began its closing argument by stating:

> First thing I have to talk to you about is the court's charge. So these three documents [the charges for the two offenses of continuous sexual abuse of a child and single offense of aggravated sexual assault] that were just read to you, this is the charge of the court. This is the law

---

[15]     Cristan does not dispute that these are correct statements of the law.

that's given to you to govern your deliberations in this case. This is the law you've sworn an oath to follow in this case. So any question you have as to what the law is that is to be applied is found right here. So these three documents that were just read to you, this is the charge of the court. This is the law that's given to you to govern your deliberations in this case. This is the law you've sworn an oath to follow in this case. So any question you have as to what the law is that is to be applied is found right here.

The State was thus referring the jury to all three charged offenses, including the offense of continuous sexual abuse of a child against Julie, which was predicated on two acts constituting the offense of indecency with a child by contact.

The State then explained to the jury that "[c]ontinuous sexual abuse of a child is a very unique charge" because it "doesn't have the exact same traditional unanimity requirement" as other criminal offenses, including the charged offense of aggravated sexual assault against Amy. The State emphasized to the jury that although they had to agree unanimously that the aggravated sexual assault against Amy "occurred just as it alleged in the charge" to find Cristan guilty of the offense of aggravated sexual assault against Amy, they did not have to agree as to whether a specific act of sexual abuse occurred to find Cristan guilty of the offense of continuous sexual abuse of a child, so long as they agreed that "at least two acts of sexual abuse as described [occurred] and that they happened over a period greater than 30 days." Thus, the State's discussion of unanimity among the jurors was intended to emphasize a key distinction between the charged offenses of aggravated sexual assault of a child and continuous sexual abuse of a child.

40

The State also instructed the jury that Amy's and Julie's testimony that Cristan "would put his hand under their pants but over their underwear and touch their vagina" described "an act of sexual abuse of a child." Although the jury was incorrectly instructed that this act against Amy constituted the offense of aggravated assault of a child, as opposed to indecency with a child by contact, the jury was nevertheless informed that the underlying conduct (intentionally or knowingly contacting Amy's sexual organ with Cristan's finger) was an act of sexual abuse for purposes of the offense of continuous sexual abuse of a child. *See generally* TEX. PENAL CODE § 21.02(b) (offense of continuous sexual abuse of child requires person to have "commit[ed] two or more acts of sexual abuse" with period "that is 30 or more days in duration"). *Cf. Reckart v. State*, 323 S.W.3d 588, 601 (Tex. App.— Corpus Christi–Edinburg 2010, pet. ref'd) (stating underlying acts of sexual abuse "are the manner and means of committing an element of the offense" of continuous sexual abuse of a child, not elements of offense). This is a correct statement of the law. *See* TEX. PENAL CODE § 21.11(c)(1) (defining indecency with child by contact to include "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child"); *see also id.* § 21.02(c)(2), (4) (defining "act of sexual abuse" for purposes of offense of continuous sexual abuse of child to include "indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching

41

through clothing, the breast of a child" and "aggravated sexual assault under Section 22.021").

Cristan's defense counsel also discussed the charge during his closing arguments. He argued:

> I too want to start with the court's charge. And, don't worry, you didn't have to memorize it. You'll be given a copy of it back in the jury room while you're deliberating these cases. You'll see in here that this is the law that applies to this case. And I just want to highlight some of the parts that I think are most important.

Cristan's counsel then discussed the presumption of innocence and burden of proof. He reminded the jury that Cristan was not on trial for any offense stemming from the photographs and video of Amy the officers found on his cell phone. He counseled the jury against allowing those images to sway the jury's decision regarding whether Cristan was guilty of the three charged offenses. Cristan's counsel noted that the only evidence of Cristan's guilt was Amy's and Julie's testimony and he argued that their testimony was not credible. Thus, neither the State nor Cristan's counsel emphasized the errors in the charge in their closing arguments.

After reviewing the arguments of counsel, we conclude that the third *Almanza* factor weighs against a finding of egregious harm. *See Almanza*, 686 S.W.2d at 171; *see also Vasquez*, 389 S.W.3d at 368.

42

**4. 4th *Almanza* Factor: Any other relevant information revealed by the record of the trial as a whole[16]**

Under the fourth *Almanza* factor, we assess whether the charge error resulted in egregious harm by considering "any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see also Vasquez*, 389 S.W.3d at 368–69. The record reflects that Cristan was tried for three offenses: (1) continuous sexual abuse of a child against Amy, (2) continuous sexual abuse of a child against Julie, and (3) aggravated sexual assault against Amy. The two alleged predicate acts of sexual abuse in Julie's case were for acts constituting indecency with a child by sexual contact. In the indictment in Julie's case, the State alleged:

> From on or about December 3rd, 2009, through December 2nd, 2017, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [Julie], a child younger than 14 years of age, namely: With intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [Julie], a child younger than 14 years of age, by touching the genitals of [Julie] with the defendant's hand, an act constituting the offense of indecency with a child by sexual contact and with intent to arouse or gratify the sexual desire of the defendant, cause [Julie], a child younger than 14 years of age, to engage in sexual contact by causing [Julie] to touch the genitals of the defendant with her hand, an act constituting the offense of indecency with a child by sexual contact.

During voir dire, the State identified the elements of the offense of continuous sexual abuse of a child and informed the venire panel:

> Acts of sexual abuse, I just stated the definition. This includes sexual assault of a child, aggravated sexual assault of a child, indecency with

---

[16] Cristan does not address the fourth *Almanza* factor in his brief.

a child by contact. . . . Now, indecency with a child by contact, what we're talking about here is touching, so less penetration more touching, intentionally or knowingly engage in any sexual contact with intent to arouse or gratify the desire of the actor; and, again, the victim is younger than 17.

Thus, the record of the trial as a whole reveals that the jury was informed of the elements of the offense of indecency with a child by contact and that acts constituting the offense of indecency with a child by contact are acts of sexual abuse for purposes of establishing the offense of continuous sexual abuse of a child. *See Vasquez*, 389 S.W.3d at 368–69 (stating egregious harm analysis requires consideration of "any other relevant information revealed by the record of the trial as a whole"). It is also notable that the factual basis underlying one of the predicate acts of indecency with a child by contact with respect to Julie is similar to the factual allegations regarding Amy because both girls alleged that Cristan touched or contacted their "sexual organ" or "genitals" with his "hand" or "finger."[17]

We further note that if the jury relied on the erroneous application portion of the charge to find Cristan guilty of continuous sexual abuse of a child based on the predicate acts of sexual abuse, which the charge incorrectly identified as aggravated

---

[17]    *Compare* indictment in trial court cause number 19-CR-1312 (continuous sexual abuse against Julie) ("With intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [Julie], a child younger than 14 years of age, by touching the genitals of [Julie] with the defendant's hand") *with* trial court cause number 19-CR-1313 (continuous sexual abuse against Amy) ("intentionally or knowingly contact the sexual organ of [Amy], who was then and there younger than 14 years of age, with [Cristan's] finger").

sexual assault of a child, it is reasonable to conclude that the jury would also have found him guilty based on the offense of indecency with a child by contact. Indecency with a child by contact is broader in scope than aggravated sexual assault of a child because the former prohibits "any touching," TEX. PENAL CODE § 21.11(c)(1) (defining "sexual contact"), whereas aggravated sexual assault prohibits "contact" or "penetration" of the child's or some else's anus, or sexual organ. *Id.* § 22.021(a)(1)(A).[18] Indecency with a child by contact and aggravated sexual assault of a child both require the perpetrator to act with the intent of sexual desire, which is articulated in the indecency with a child statute as "the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c); *see also Evans*, 299 S.W.3d at 142. This court has recognized that the key distinction between these offenses is the "degree of physical invasion." *Prestiano v. State*, 581 S.W.3d 935, 943 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (holding offense of indecency with child by contact in that case was lesser-included offense of aggravated sexual assault of child and stating "the only thing separating the two offenses is the degree of physical invasion").[19]

---

[18] For example, the offense of aggravated sexual assault of a child prohibits individuals from "caus[ing] the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." TEX. PENAL CODE § 22.021(a)(1)(A)(iii).

[19] Neither Cristan nor the State contend that indecency with a child by contact is a lesser-included offense of aggravated sexual assault of a child in this case. *See*

After considering the record of the trial as a whole, we conclude that the fourth *Almanza* factor weighs against a finding of egregious harm. *See Almanza*, 686 S.W.2d at 171; *see also Vasquez*, 389 S.W.3d at 368–69.

Although the first *Almanza* factor, where we consider the entire charge, weighs in favor of egregious harm, the third *Almanza* factor (the arguments of counsel) weighs against egregious harm because counsel did not emphasize the errors, make any misstatements of the law, and the State correctly instructed the jury during closing arguments that the underlying conduct (intentionally or knowingly contacting Amy's sexual organ with Cristan's finger) was an act of sexual abuse for purposes of the offense of continuous sexual abuse of a child.

The second and fourth *Alamanza* factors also weigh against a finding of egregious harm because after considering the strength of the evidence supporting Cristan's conviction, none of which was directly contradicted, and the other relevant information in the record, including that the jury was informed of the elements of offense of indecency with a child and told the offense was "an act of sexual abuse" for purposes of the offense of continuous abuse of a child, and the similarities between the factual scenario alleged against Amy that incorrectly discounted as aggravated sexual assault of a child, and the factual scenario alleged against Julie

*generally Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009) (holding indecency with child was lesser-included offense of aggravated sexual assault of child in that case because "both offenses are predicated on same act").

46

that was correctly described as indecency with a child by contact, it is apparent that these circumstances mitigated any harm that could have resulted from the erroneous charge in Amy's case.

In light of those factors, and based on the unique facts of this case, we cannot say that the charge errors affected the very basis of the case, deprived Cristan of a fair and impartial trial, or vitally affected Cristan's defensive theory at trial. *See* TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows that jury charge error was calculated to injure defendant's rights, or unless record demonstrates defendant did not have fair and impartial trial); *see also Taylor*, 332 S.W.3d at 490 (stating egregious errors are "those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive"). We thus conclude that Cristan did not suffer egregious harm as a result of the charge errors. *See Almanza*, 686 S.W.2d at 171 (listing four factors courts consider when assessing whether defendant was egregiously harmed by charge error); *see also Fields*, 2022 WL 3268525, at *8 (stating "whether jury charge error was harmful is determined on a case-by-case basis, rather than under any bright-line rules") (citing *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018)).

We overrule Cristan's sole issue.

**Conclusion**

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do Not Publish.   TEX. R. APP. P. 47.2(b).